. Gladys L. McDONALD, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

ESTATE OF John McDONALD, Deceased, C.F. Cornelius, Personal Representative, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 87–2389.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1988.

Decided Aug. 17, 1988.

Rehearing Denied Sept. 15, 1988.

Garry A. Pearson, Grand Forks, N.D., for appellant.

. Teresa E. McLaughlin, Washington, D.C., for appellee.

Before FAGG and WOLLMAN, Circuit Judges, and RE *, Chief Judge.

---

* The HONORABLE EDWARD D. RE, Chief Judge, United States Court of International Trade, sitting by designation.

WOLLMAN, Circuit Judge.

The Estate of John McDonald (Estate) appeals from a tax court order upholding the Commissioner's determination that certain estate property did not qualify for special use valuation under section 2032A of the Internal Revenue Code.[1] In a consolidated appeal, Gladys L. McDonald (Gladys) appeals from a tax court order upholding a determination by the Commissioner that her disclaimer of the survivorship interest in jointly-held property was a taxable transfer because such disclaimer was not made within the time period prescribed by 26 C.F.R. § 25.2511–1(c). *McDonald v. Comm'r*, 89 T.C. 293 (1987). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

John McDonald (Decedent), a resident of North Dakota, died testate on January 16, 1981, survived by his widow, Gladys, four children and three grandchildren. Except for some small specific bequests, the will provided that Gladys was to inherit all of Decedent's property. In addition, Decedent and Gladys had owned certain property, including several parcels of farmland, as joint tenants with right of survivorship.

On September 23, 1981, Gladys disclaimed her interest in the farmland she stood to inherit under the terms of Decedent's will, as well as the survivorship interest in most of the farmland the couple had owned in joint tenancy. As a result of the disclaimer, this property passed to three of Decedent's children, Virlyn McDonald, Dorothy Spicer, and Gladys Jean Cox, in equal shares.

The federal estate tax return for Decedent's estate was timely filed with the Internal Revenue Service on October 7, 1981. Included in this return was a "Notice Of Election Of Special Use Valuation As Au-

thorized By Section 2032A" and an "Agreement Relating To Special Use Valuation Under Section 2032A Of The 1976 Tax Reform Act." Both were signed by Gladys and C.F. Cornelius, the personal representative of the Estate, and listed Gladys as the only person with an interest in the farmland on which special use valuation was elected.

On February 26, 1982, an amended federal estate tax return was filed for Decedent's estate. This return contained an amended "Agreement Relating To Special Use Valuation Under Section 2032A Of The 1976 Tax Reform Act," signed by Virlyn McDonald, Dorothy Spicer, Gladys Jean Cox, and three of Decedent's grandchildren.

Based on the stipulated facts, the tax court upheld the Commissioner's refusal to permit special use valuation of the farmland, holding that by omitting the children's names and signatures on the original notice of election and agreement, the Estate had not complied with the election requirements under 26 C.F.R. § 20.2032A–8. The tax court also upheld the Commissioner's determination that Gladys's disclaimer of the survivorship interest was a taxable gift, holding that she had not made the disclaimer within the time period prescribed by 26 C.F.R. § 25.2511–1(c). The parties having stipulated to the facts below, we review the tax court's application of the law to the facts de novo. *Mangels v. United States*, 828 F.2d 1324, 1326 (8th Cir.1987).

## II.

■ An election for a special use valuation is made by attaching a notice of election and a recapture agreement to a timely filed federal estate tax return. 26 U.S.C. § 2032A(d)(1);[2] 26 C.F.R.

---

**1.** Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 and related regulations or to relevant state statutes as amended and in effect at the date of death.

**2.** In 1981, section 2031A(d)(1) was amended to allow the election to be made on the first estate tax return, whether or not timely filed. This amendment is inapplicable in the present case, however, because it only applies to the estates of decedents dying after December 31, 1981.

§ 20.2032A–8(a)(3).[3] The notice of election must contain fourteen specific items, including "(xii) The name, address, taxpayer identification number, and relationship to the decedent of each person taking an interest in each item of specially valued property * * *." 26 C.F.R. § 20.2032A–8(a)(3). An interest in the property is one "which, as of the date of decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property of the estate." 26 C.F.R. § 20.2032A–8(c)(2).

If the property subject to special use valuation is disposed of or otherwise ceases to be qualified use property within fifteen years after a decedent's death, an additional estate tax, referred to as recapture tax, is imposed, for which the qualified heir is personally liable. 26 U.S.C. § 2032A(c). To ensure payment, all parties with an interest in the property must expressly consent to personal liability for the recapture tax in a binding agreement attached to a timely filed estate tax return. 26 C.F.R. § 2032A–8(c)(1).[4]

The parties have stipulated that Gladys effectively disclaimed her interest in the property for which the special use valuation is sought pursuant to N.D.Cent.Code §§ 30.1–10–01 and 47–11.1–01. Moreover, the Estate agrees that under North Dakota statute disclaimers relate back to the date of the Decedent's death and that the disclaimed property devolves as though the disclaiming party had predeceased the Decedent. Thus, as of the date of Decedent's death, those taking an interest in the disclaimed property were Virlyn McDonald, Dorothy Spicer, and Gladys Jean Cox.

The Estate argues that the relation-back doctrine is a legal fiction that should be ignored for the purpose of this election. We disagree. Those taking an interest in specially valued property are those whose interests can be asserted under applicable local law to affect an estate's disposition of such property. 26 C.F.R. § 20.2032A–8(c)(2). By virtue of the disclaimer, Gladys had no such interest under North Dakota laws. Accordingly, we conclude that the notice of election and recapture agreement filed with the original estate tax return did not satisfy the requirements of 26 C.F.R. § 20.2032A–8.

In 1984, section 2032A was amended as follows to permit correction of certain imperfections in special use elections and recapture agreements:

(a) IN GENERAL.—Section 2032A(d) (relating to election and agreement) is amended by adding at the end thereof the following new paragraph:

"(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.—The Secretary shall prescribe procedures which provide that in any case in which—

"(A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and

"(B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

"(i) the notice of election, as filed, does not contain all required information, or

"(ii) signatures of 1 or more persons required to enter into the agreement described in paragraph (2) are not in-

**3.** This regulation was drafted pursuant to express statutory authority. 26 U.S.C. § 2032A(d)(1). The Estate does not argue that this regulation is unreasonable or plainly inconsistent with the statute. Accordingly, this regulation must be upheld. *See Comm'r v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981).

**4.** 26 C.F.R. § 2032A–8(c)(1) states in relevant part:

*(c) Agreement to special valuation by persons with an interest in property—(1) In gener-*

*al.* The agreement * * * must be executed by all parties who have any interest in the property being valued based on its qualified use as of the date of the decedent's death. In the case of a qualified heir, the agreement must express consent to personal liability under section 2032A(c) in the event of certain early dispositions of the property or early cessation of the qualified use. * * * The agreement is to be in a form that is binding on all parties having an interest in the property.

cluded on the agreement as filed, or the agreement does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements."

Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 1025(a), 98 Stat. 494, 1030–31 (1984) (codified as amended at 26 U.S.C. § 2032A(d)(3)) (1984 Amendment).

■ The Estate argues that even if the notice of election and recapture agreement filed with the original estate tax return did not comply with the literal requirements of 26 C.F.R. § 20.2032A–8, they nonetheless substantially complied with those requirements pursuant to the 1984 Amendment. Specifically, the Estate argues that its amended return corrects the agreement as permitted by 26 U.S.C. § 2032A(d)(3)(B)(ii) by adding "signatures of 1 or more persons required to enter into the agreement." We disagree.

Before a recapture agreement may be corrected by the addition of signatures, the agreement as filed with the original return must substantially comply with 26 C.F.R. § 20.2032A–8. As discussed above, this regulation specifically requires the agreement to "be in a form that is binding on all parties having an interest in the property." 26 C.F.R. § 20.2032A–8(c)(1). The Estate does not argue that the original recapture agreement was binding on Decedent's children under North Dakota law. Thus, the issue is whether a recapture agreement that was not executed by any of the parties with an interest in the property can substantially comply with the requirements of 26 C.F.R. § 20.2032A–8.

Neither party has cited a case addressing this specific issue. In construing a case of first impression, we look first to the language of the statute itself; second, to its legislative history; and third, to the interpretation given to it by its administering agency. *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985). Having done so, we conclude that the recapture agreement filed with the original return did not substantially comply with 26 C.F.R. § 20.2032A–8.[5]

The statutory language, as a precondition to the addition of signatures, requires that the original election substantially comply with 26 C.F.R. § 20.2032A–8, which includes the requirement that the original agreement be binding on all parties taking an interest in the property. Based only on this language, it is difficult to conclude that the original election was in substantial compliance with this requirement when it contained neither the name nor the signature of anyone with an interest in the property as of the date of Decedent's death. *See Tipps v. Comm'r,* 74 T.C. 458 (1980) (for an election to be valid, there must be certainty as to what was elected and an unequivocal agreement to be bound by the applicable provisions).

Second, the legislative history of the 1984 Amendment states as follows:

[A]n agreement to the current use valuation election may be perfected under this provision provided the agreement, as filed with the estate tax return, evidences substantial compliance with the requirements of the regulations. To be eligible for perfection, the agreement as originally filed must at a minimum be valid under State law and must include the signatures of all parties having a present interest or a remainder interest other than an interest having a relatively small value. The right to perfect agreements is intended to be limited to cases where, for example, a parent of a minor remainderman, rather than a *guardian ad litem* as required under State law, signs the agreement.

H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 1241, *reprinted in* 1984 U.S.Code Cong. & Admin.News 1445, 1929 (footnote omitted). Clearly, the agreement as filed with the original return does not contain the signatures required by the legislative history.

---

5. Because this case is on appeal from the Commissioner's determination that the Estate had not substantially complied with the require-ments of 26 C.F.R. § 20.2032A–8, it is unnecessary to separately address the third vehicle of statutory construction.

The Estate urges us to disregard the legislative history of the 1984 Amendment. Primarily, it argues that there is no need to resort to legislative history when the plain language of the statute permits the addition of "signatures of 1 or more persons required to enter into the agreement." This argument is misdirected, however, because the interpretation problem in this case concerns the term "substantial compliance," the meaning of which is not clear from the face of the statute.

In enacting the special use provisions in 1976, Congress intended " 'to encourage the continuation of family farms after the death of the farm's owner' " *Mangels,* 828 F.2d at 1326 (quoting *Martin v. Commissioner,* 783 F.2d 81, 82 (7th Cir.1986)). The 1984 Amendment furthers this policy by preventing Internal Revenue Service representatives from using slight technical failures in a notice of election or recapture agreement to prevent otherwise qualified taxpayers from taking advantage of the special use provisions. 130 Cong.Rec. S4318–19 (daily ed. April 11, 1984) (statement of Sen. Dixon, amendment sponsor). Based on our review of the legislative history, however, we conclude that the omission from the recapture agreement of the signatures of all persons with an interest in the property is not the type of slight technicality envisioned by Congress when the 1984 amendment was enacted.[6]

The Tax Reform Act of 1986 also contained a provision permitting correction of certain failures in special use elections and recapture agreements. That provision states in relevant part:

(a) IN GENERAL.—In the case of any decedent dying before January 1, 1986, if the executor—

(1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code within the time prescribed for filing such return (including extensions thereof), and

(2) provided substantially all the information with respect to such election required on such return of tax,

such election shall be a valid election for purposes of section 2032A of such Code.

(b) EXECUTOR MUST PROVIDE INFORMATION.—An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of the enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.

Tax Reform Act of 1986, Pub.L. No. 99–514, § 1421(a)–(b), 100 Stat. 2085, 2716 (1986) (1986 Amendment).

The essential difference between the 1986 Amendment and the 1984 Amendment is that substantial compliance here is with reference to the instructions to the federal estate tax return, rather than with the Treasury regulation. H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–770–771, *reprinted in* 1986 U.S.Code Cong. & Admin. News 4075, 4858–59. The Estate has not argued that the instructions followed in preparation of its return varied from the regulation requirements. Accordingly, we conclude that the 1986 Amendment provides the Estate no more relief than did the 1984 Amendment.[7]

---

**6.** The fact that Congress intended the 1984 Amendment to permit the correction of only slight technical failures is further supported by the illustrations in the legislative history of information items that may be added to a notice of election under 26 U.S.C. § 2032A(d)(3)(B)(i): social security numbers and addresses of qualified heirs; copies of appraisals, but not if such appraisals were obtained after the estate tax return was made; and legal descriptions of the property, provided the descriptions initially filed with the return described the property with reasonable clarity. H.R.Conf.Rep. No. 861, 98th

Cong., 2d Sess. 1241 *reprinted in* 1984 U.S.Code Cong. & Admin.News 1445, 1929.

**7.** Both the notice of election and the recapture agreement must substantially comply with the Treasury regulations. H.R.Cong.Rep. No. 861, 98th Cong., 2d Sess. 1241, *reprinted in* 1984 U.S.Code Cong. & Admin.News 1445, 1929. Because we have determined that the recapture agreement as filed with Decedent's original estate tax return did not substantially comply with the 26 C.F.R. § 20.2032A–8, it is unnecessary for us to address the sufficiency of the notice of election.

## III.

■ Federal gift tax is imposed "on the transfer of property by gift." 26 U.S.C. § 2501(a)(1). The scope of this tax is broad, applying "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." 26 U.S.C. § 2511(a). Moreover, in construing the gift tax provisions, " '[t]he terms "property," "transfer," "gift," and "indirectly" are used in the broadest and most comprehensive sense; the term "property" reaching every species of right or interest protected by law and having an exchangable value.' " *Jewett v. Comm'r*, 455 U.S. 305, 309, 102 S.Ct. 1082, 1086, 71 L.Ed.2d 170 (1982) (quoting S.R. No. 665, 72nd Cong., 1st Sess. 39 (1932); H.R. No. 708, 72nd Cong., 1st Sess. 27 (1932)). Thus, absent an applicable exception, a disclaimer, which is an indirect transfer, would fall within the encompassing language of the gift tax statute.

Such an exception exists, however, for certain disclaimers made within a specified period after the disclaimed property is transferred to the disclaimant. 26 U.S.C. § 2518 (applicable for transfers creating an interest in the disclaimant after December 31, 1976;[8] 26 C.F.R. § 25.2511–1(c)(2) (applicable for transfers creating an interest in the disclaimant before January 1, 1977).[9]

The effect of these disclaimer provisions is to collapse the entire transaction into a single transfer from the original owner to the ultimate recipient, *Kennedy v. Comm'r*, 804 F.2d 1332, 1334 (7th Cir. 1986), thereby ignoring the gift tax consequences of the intermediate disclaimer.

Gladys disclaimed the survivorship interest in the property she had formerly held with decedent as joint tenants on September 23, 1981, less than nine months following decedent's death. The question before us is whether the transfer relative to which the timeliness of the disclaimer is measured refers to the transfer creating the joint tenancy or the transfer of the survivorship interest at the joint tenant's death.

The tax court, relying primarily on *Jewett v. Comm'r*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982), adopted the Commissioner's position that "transfer" as used in the disclaimer provisions refers to the transfer creating the joint tenancy. Because the joint tenancies in question were created prior to 1977, the court concluded that Gladys' September 23, 1981, disclaimer was not "made within a reasonable time" as required by 26 C.F.R. § 25.2511–1(c)(2).

In *Jewett*, Jewett's grandmother established a testamentary trust providing that the trust income should be paid to Jewett's grandfather for life, and thereafter to Jew-

---

**8.** Section 2518 states in relevant part:
 (a) General rule.—For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.
 (b) Qualified disclaimer defined.—For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if—
 (1) such refusal is in writing,
 (2) such writing is received by the tranferor [sic] of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of—
 (A) the day on which the transfer creating the interest in such person is made, or
 (B) the day on which such person attains age 21,
 (3) such person has not accepted the interest or any of its benefits, and

 (4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either—
 (A) to the spouse of the decedent, or
 (B) to a person other than the person making the disclaimer.

**9.** 26 C.F.R. § 25.2511–1(c)(2) provides in relevant part:
 [W]here the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right completely and unqualifiedly to refuse to accept ownership of property transferred from a decedent * * *, a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocal and effective under the local law. There can be no refusal of ownership of property after its acceptance.

ett's parents. Upon the death of the surviving parent, the trust principal was to be divided " 'into equal shares * * * so that there shall be one share for each child of my said son [petitioner's father] then living and one share for the issue then living representing each child of my said son then dead.' " 455 U.S. at 306, 102 S.Ct. at 1084 (quoting trust instrument). While Jewett's mother was still living, and therefore before his interest vested, Jewett disclaimed his interest in the trust. At the time, Jewett was forty-five years old, and the trust had been in existence for thirty-three years. The Supreme Court held that the transfer referred to in 26 C.F.R. § 25.2511–1(c) occurred when the contingent interest was created and not when it vested, and that a disclaimer made thirty-three years after the transfer was not made "within a reasonable time" under 26 U.S.C. § 2501(a)(1) and 2511(a). *Id.* at 312, 318–19, 102 S.Ct. at 1091.

Gladys, on the other hand, urges this court to adopt the Seventh Circuit's position in *Kennedy v. Comm'r,* 804 F.2d 1332 (7th Cir.1986). Kennedy had received a gift of a joint tenancy in 1953 when she and her husband acquired the farm. Her husband died in 1978, and in 1979 she disclaimed the survivorship interest under Illinois law. The Seventh Circuit concluded that the relevant transfer occurred when Kennedy acquired the survivorship interest on her husband's death in 1978, making 26 U.S.C. § 2518 the applicable disclaimer provision.

*Kennedy* distinguished *Jewett* on the basis of the power of partition that is associated with joint tenancy. *Kennedy* found the deceased joint tenant's power of partition to be equivalent to a general power of appointment over the survivorship interest, because by partitioning the property a joint tenant could direct his half to his creditors

and legatees of his choice.[10] *Kennedy,* 804 F.2d at 1335. Under the gift tax regulations, "[a] person to whom any interest in property passes by reason of the * * * lapse of a general power [of appointment] may disclaim such interest within a 9–month period after the * * * lapse." 26 C.F.R. § 25.2518–2(c)(3). Applying this concept to the transfer of the survivorship interest, *Kennedy* concluded that the surviving joint tenant should have nine months after the lapse of the decedent's power of partition in which to disclaim a survivorship interest.

The Commissioner contends that the tax court correctly concluded that the deceased joint tenant's right to partition or sever is merely another contingency and does not distinguish *Kennedy* from *Jewett.* The Commissioner notes that under North Dakota law, "[a] joint tenancy may be described as a life estate with each joint tenant having a contingent remainder in fee—the contingency being based upon survival of the other joint tenant." *Jamestown Terminal Elevator, Inc. v. Knopp,* 246 N.W.2d 612, 613 (N.D.1976). In this respect, the Commissioner oversimplifies the nature of the deceased joint tenant's interest. In *Jamestown,* the North Dakota Supreme Court further clarified the nature of this interest: "The deceased joint tenant had, essentially, a life estate which no longer exists, a power in himself and his judgment creditor to sever which was never exercised and lapsed upon death, and a contingent remainder which never vested." 246 N.W.2d at 614. This power to sever, which the Seventh Circuit analogized to a general power of appointment over the survivorship interest, distinguishes the right to partition or sever from the survival contingency addressed in *Jewett.*[11]

---

**10.** In the gift tax context, a general power of appointment generally means "any power of appointment exercisable in favor of the person possessing the power * * *, his estate, his creditors, or the creditors of his estate." 26 C.F.R. § 25.2514–1(c)(1).

**11.** The tax court also attempted to distinguish *Jewett* on the basis that North Dakota law permits severance of a joint tenancy only in limited circumstances. This is an incorrect statement of North Dakota law. A joint tenancy can be severed in many ways, such as by voluntary agreement between the parties, *Renz v. Renz,* 256 N.W.2d 883, 886 (N.D.1977), by an action for partition under N.D.Cent.Code § 32–16–01, or by the conveyance by one co-tenant of his interest in joint tenancy property. *Robar v. Ellingson,* 301 N.W.2d 653, 662 (N.D.1981).

Accordingly, we conclude that the relevant transfer for the purpose of the disclaimer provisions occurs at the death of the joint tenant and not at the creation of the joint tenancy. Thus, the time period in which Gladys could disclaim the survivorship interest began to run in 1981 and therefore is governed by the provisions of 26 U.S.C. § 2518. Although there is no question that Gladys' disclaimer was timely under this statute, the parties disagree as to whether the disclaimer otherwise qualified under 26 U.S.C. § 2518. Accordingly, we remand the case to the tax court for the purpose of that determination. *Kennedy*, 804 F.2d at 1336 (the tax court should have the initial opportunity to apply the terms of 26 U.S.C. § 2518 and its implementing regulations).

In summary, the Tax Court's order upholding the Commissioner's determination that the farmland did not qualify for special use valuation under 26 U.S.C. § 2032A is affirmed. Regarding the gift tax issue, the Tax Court's order is reversed, and the case is remanded for further proceedings consistent with this opinion.

