**Elizabeth J. BARTLETT, as Executrix of the Estate of Charles E. Grimes, Deceased, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 89–2237.**

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1991.

Decided July 12, 1991.

Rehearing and Rehearing En Banc Denied Sept. 10, 1991.

A. Clay Cox, Merrick C. Hayes, Hayes, Schneider, Hammer, Miles & Cox, Bloomington, Ill., for petitioner-appellant.

Peter K. Scott, I.R.S., Gary R. Allen, Ann Belanger Durney, Laura Marie Conley O'Hanlon, Dept. of Justice, Tax Div., Appellate Section, Charles S. Casazza, U.S. Tax Court, Washington, D.C., for C.I.R.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Ben Franklin once said that in this world, nothing can be said to be certain but death and taxes. This case calls for a variation on the old adage. Add some unfortunate mistakes by a well-meaning lawyer to the picture and the saying becomes: nothing can be said to be certain but death and *higher* taxes. Here's what happened. In April 1989 the Tax Court determined that there was a deficiency in estate taxes due from the Estate of Charles E. Grimes in the amount of $159,054. The decedent lived in Illinois and died testate on December 25, 1980. His spouse Elizabeth J. Grimes (now Elizabeth J. Bartlett) became executrix of his estate.

## I. FACTS

Grimes and his wife executed their "Mutual Last Will and Testament" on September 27, 1980. Key paragraphs of that doc-

ument appear at pages 322–23 of this opinion. After her husband's death, his widow retained Robert Gammage, the attorney who prepared the will, to aid her in her capacity as executrix. On her estate tax return, the executrix, with Gammage's assistance, elected the provisions of Section 2032A of the Internal Revenue Code (26 U.S.C. § 2032A) with respect to decedent's farmland. Section 2032A permits a taxpayer to declare the value of a family farm or other closely-held business according to its actual use value instead of its fair market value. The provision's rationale is to lessen the tax burden on the heirs to the estate, so that they may continue to operate the eligible property. Without Section 2032A, the estate would have to declare the value of the property according to its fair market value, the usual benchmark for placing the value on property. Since the fair market value can be expected to far exceed the use value, the payment of estate taxes might well place the executrix in a bind, forcing the heir to sell the property to pay the tax. See, *e.g.*, *Prussner v. United States*, 896 F.2d 218, 220 (7th Cir.1990) (*en banc*); *Schuneman v. United States*, 783 F.2d 694, 697 (7th Cir.1986).

Section 2032A is a highly articulated provision, and taxpayers electing to have farmland valued according to its actual use must satisfy a plethora of conditions.* Sections 2032A(a)(1)(B) and (d) and the implementing Treasury Regulations (Treas. Regs. on Estate Tax, § 20.2032A–8(a)(3)) set forth the precise filing requirements necessary to trigger the estate tax treatment under Section 2032A. Taxpayer satisfied the first of these. On the estate tax return, an "X" was placed next to question

11 on page 2—"Do you elect the special valuation * * * ?" Although taxpayer answered Question 11 in the affirmative, the estate failed to heed the remaining requirement of Question 11, printed on the tax return. Question 11 additionally required the taxpayer to:

> attach to this return an agreement to express consent to personal liability under section 2032A(c) in the event of certain early dispositions of the property or early cessation of the qualified use. The agreement must be executed by all parties receiving any interest in the property being valued based on its qualified use.

The executrix and the four Grimes children signed an "Agreement to Special Valuation Under Section 2032A," known as a "recapture agreement," on September 23, 1981—two days before the due date of the estate tax return. In signing the recapture agreement, the executrix and the decedent's four children agree that the property will continue to be put to its qualified use, and, moreover, if the property is either sold to a non-family member or put to a non-qualifying use, then the estate will owe the difference between taxes paid under Section 2032A and the amount that the estate would have owed had the property been taxed at its fair market value. See Committee on Ways and Means, Estate and Gift Tax Reform Act of 1976, H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. 25–27 (1976), U.S.Code Cong. & Admin.News 1976, p. 2897.

Unfortunately, Gammage, the estate's lawyer, did not give the recapture agreement to Grimes's widow when she filed the timely return through United States Mail.

---

* These include the following requirements:

(1) the decedent must have been a citizen or resident of the United States;

(2) the property, the value of which must exceed certain percentages of the decedent's gross and adjusted estate, must be located in the United States;

(3) the property must pass to a qualified heir, who must be a member of the decedent's family;

(4) the decedent or a member of decedent's family must materially participate in the operation of the farm or business in 5 of the 8 years preceding decedent's death; and

(5) the property must have been used for a qualified use by the decedent or a member of decedent's family at the date of decedent's death.

*Schuneman v. United States*, 783 F.2d 694, 697–698 (7th Cir.1986). The Commissioner of Internal Revenue does not contest taxpayer's claim that these requirements have been met. What is at issue on appeal is the executrix' admitted failure to file the necessary recapture agreement at the time she filed her estate tax return.

On October 7, 1981, the Internal Revenue Service received an October 5, 1981, letter from Gammage stating that the recapture agreement was "inadvertently omitted from [the] transmittal of the original return in this estate." He enclosed the previously signed recapture agreement with his letter. On June 22, 1984, the Commissioner of Internal Revenue asserted a deficiency in federal estate tax in part because the estate had failed to timely submit the recapture agreement.

The Commissioner's other grounds for asserting the estate's additional tax liability arose from the executrix's claim to a marital deduction of $143,866.87 for personal property, consisting in part of stocks and bonds of $14,588.50, mortgage, notes and cash of $79,481.97, and $19,408.76 in miscellaneous property, totaling $113,-479.23. As support for this deduction, taxpayer invoked Section 2056 of the Code (26 U.S.C. § 2056). Congress enacted this provision to achieve the uniformity of federal estate tax between states with community property laws and those without them. *Jackson v. United States*, 376 U.S. 503, 505–506 & n. 4, 84 S.Ct. 869, 870–871 & n. 4, 11 L.Ed.2d 871 (construing Section 812(e) of the Internal Revenue Code of 1939 (26 U.S.C. § 812(e) (1952 Ed.)), the predecessor to Section 2056). Section 2056 saves the surviving spouse from having to pay estate taxes on the property he or she inherits if that property would otherwise be included in determining the taxable portion of the gross estate. However, Section 2056 prevents the surviving spouse from benefitting from the marital deduction when the property interest at issue is terminable. Put another way, if there is a chance that the acquired property interest will fail due to the occurrence of some event or contingency, the surviving spouse may not deduct the value of the property. This limitation makes sense. If the surviving spouse's interest in the property terminates prior to or at the time of his or her death, then the property interest escapes taxation twice. Because the Commissioner viewed the claimed deduction as a life estate that terminated upon the surviving spouse's death, he disallowed the amount on the ground that it was a non-qualifying terminable interest under the will.

On December 20, 1988, the Tax Court filed a Memorandum Opinion (56 T.C.M. (CCH) 890) holding that the estate did not make a valid election under Section 2032A because it failed to timely submit the recapture agreement with the estate tax return. After the initial briefs in this case were filed, this Court decided *Prussner v. United States*, 896 F.2d 218 (7th Cir.1990) (*en banc*), where we construed the recapture agreement in a Section 2032A election. In *Prussner*, we decided that the failure to file the recapture agreement "*with* the return" did not satisfy an unequivocal requirement of Section 2032A and that the failure by a taxpayer's lawyer to comply meant that taxpayer had not substantially complied with the regulation. *Id.* at 224–225 (emphasis in original). With respect to taxpayer's claimed marital deduction, the Tax Court held that under Illinois law the will constituted a joint and mutual will which limited the executrix's ability to dispose of the property, thereby imposing terminable conditions on the interest. The Tax Court construed the will as providing the widow with a life estate in the personal property with remainder to the Grimes children. Illinois law mandated this construction of the will. Therefore, as to both aspects of the Tax Court's judgment, we affirm, because the deficiency in this estate tax of $159,054 was warranted by *Prussner* and by Illinois law.

## II. ANALYSIS

### A. *Untimely recapture agreement*

■ As explained above and in this Court's *Prussner* decision, while property is generally valued for federal estate tax purposes on the basis of its fair market value, Congress enacted Section 2032A of the Internal Revenue Code in 1976 to provide a limited exception to this rule with respect to the valuation of certain family farms and other closely-held businesses. In the absence of Section 2032A, inherited farmland would be valued at its "highest and best use," often requiring the heirs of family farms to sell the farms in order to

pay the tax. *E.g., Whalen v. United States*, 826 F.2d 668, 669 (7th Cir.1987); see also H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. at 21–22, U.S.Code Cong. & Admin.News 1976, p. 3376 (noting the desirability of encouraging "continued use of property for farming and other small business purposes"). Section 2032A permits taxpayers to declare the value of their property for estate tax purposes on the basis of its actual use, thus enabling them to continue putting the property to use for the same purpose.

Section 2032A(a) requires the executrix to indicate on the estate tax return the taxpayer's intention to claim the deduction and to file the recapture agreement. The added requirement of the recapture agreement provides a written guarantee to the Commissioner that all of the parties having an interest in the property—here the other heirs to the estate—agree that the estate may be put to the qualified use. Only by continuing to put the property to use as a farm or other closely-held business may the executrix deduct the use value rather than the fair market value of the property. *Prussner*, 896 F.2d at 221. Moreover, the recapture agreement manifests the signatories' commitment that the estate will pay the difference if the property is sold or is no longer put to its qualified use.

In turn, Section 2032A(d) requires that the election shall be made not later than the time prescribed by Section 6075(a) for filing estate tax returns, namely, within nine months after the date of the decedent's death. The applicable Treasury Regulation requires that the notice of election and the recapture agreement be attached "to a timely filed estate tax return." 26 C.F.R. § 20.2032A–8(a)(3). Unless the election, including the attached recapture agreement, is "timely made, special use valuation is not available to the estate." *Id.*

Here Grimes's widow, the estate's executrix, did not attach the recapture agreement to the estate tax return, as required by *Prussner* and the applicable regulation, when the return was filed on September 24, 1981. In fact, her attorney did not forward the agreement to the Internal Revenue Service until 10 days after the due date for filing the return. Therefore the executrix did not comply with either Section 2032A(d)(1) of the Internal Revenue Code or with the Treasury Regulation giving effect to the filing requirement. 26 C.F.R. § 20.2032A–8(a)(3). Courts have repeatedly upheld the validity of this Estate Tax Regulation. *Prussner*, 896 F.2d at 225; *McDonald v. Commissioner*, 853 F.2d 1494, 1496 n. 3 (8th Cir.1988) (recognizing that the Regulation was drafted pursuant to direct statutory authority), certiorari denied *sub nom. Cornelius v. Commissioner*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155; and *Estate of Gunland v. Commissioner*, 88 T.C. 1453, 1456–1458 (1987) (noting that in the absence of a recapture agreement, it is unclear whether the heirs are on notice of either the recapture provisions or of the possibility that they will be subject to recapture tax in the future), superseded by statute as stated in *Estate of Johnson v. Commissioner*, 89 T.C. 127 (1987).

The filing of the recapture agreement is an integral part of a valid Section 2032A election. In the Conference Report explaining the legislative purpose behind Section 2032A, the House Ways and Means Committee states: "one of the requirements for making a valid election is the filing with the estate tax return [of] a written [recapture] agreement * * *." H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. at 27, U.S.Code Cong. & Admin.News 1976, p. 3381.

As the Eighth Circuit has put it, "[t]o ensure payment [of the recaptured tax] all parties with an interest in the property must expressly consent to personal liability for the recaptured tax in a *binding agreement attached to a timely filed estate tax return*." *McDonald*, 853 F.2d at 1496 (emphasis supplied). If, as here, an executor fails to attach a recapture agreement to an original timely-filed estate tax return, the property will be valued for tax purposes at its highest and best use. *Estate of Gunland*, 88 T.C. at 1460.

In *Prussner* we agreed with the Eighth Circuit, holding that the statute and regulation require that the Section 2032A election be made by attaching the recapture agreement to a timely-filed estate tax return. 896 F.2d at 223. Unfortunately that was not done with respect to the tax return filed with the Commissioner by the executrix of the Grimes estate.

### 1. The substantial compliance doctrine

■ *Prussner* also guides our analysis of the claim by the executrix that, despite the failure to timely file the recapture agreement, the estate in all other respects substantially complied with the statute and regulation. Executrix asserts that its omission is covered by the substantial compliance amendment contained in the 1984 enactment of Section 2032A(d)(3). However, *Prussner* held that a recapture agreement that is in one respect or another defective is inexcusable and fails to substantially comply with the regulation. *Id.;* *McDonald,* 853 F.2d at 1497 (a recapture agreement filed along with the estate's tax return but containing "neither the name nor the signature of anyone with an interest in the property" did not substantially comply with 26 C.F.R. § 20.2032A–8). The Eighth Circuit subsequently reaffirmed *McDonald* in *Foss v. United States,* 865 F.2d 178, 181 (1989), rejecting an estate's bid for special use valuation where neither the notice of election nor the recapture agreement was attached to the estate tax return. Accord *Estate of Merwin v. Commissioner,* 95 T.C. 168 (1990).

It is no excuse that the estate's lawyer apparently overlooked the requirement that the recapture agreement must be filed with the estate tax return. In the context of a failure to timely elect favorable tax treatment under another provision of the Code, this Court recognized that "[t]he taxpayer's own ignorance cannot excuse the failure to make a timely election, regardless of whether he or she is ignorant only of the election opportunity or the tax consequences [of the provision] itself." *Whyte v. Commissioner,* 852 F.2d 306, 311 (7th Cir.1988); *Illinois Valley Paving Co. v. Commissioner,* 687 F.2d 1043, 1046 (7th Cir.1982) (a court cannot refuse to enforce provisions of the Code "on the ground that they were incomprehensible to or overlooked by the taxpayer").

Here Congress restricted the opportunity to prove a defective election to instances where the original documents submitted with the return substantially comply with the regulations. Furthermore, Congress determined that government revenue would best be protected by preventing the executor from extending the substantial compliance doctrine to actions taken after the time that the return is filed when timely filing is mandated by the Regulation. As the Tax Court determined in *Estate of Gunland,* 88 T.C. at 1459, the statute and regulation expressly provide the manner in which the Section 2032A election is to be made, making the timely-filed recapture agreement "an integral part of the statute scheme in that it subjects all qualified heirs to potential recapture tax liability." Because the provisions are explicit, the substantial compliance doctrine is inapplicable and insufficient to overcome the mistake. *Id.* Accord *Estate of Strickland v. Commissioner,* 92 T.C. 16, 27 (1989).

■ The substantial compliance doctrine as applied to cases involving the election of Section 2032A(d)(3) is limited to correcting minor errors in a recapture agreement and notice of election filed with a timely estate tax return. A taxpayer may claim substantial compliance with Section 2032A "only where the notice of election and the written [recapture] agreement are included with the timely filed estate tax return." *Voorhis v. United States,* 88–1 USTC ¶ 13,749 at 84,097, 1987 WL 49370 (C.D.Ill.1987). As the legislative history of Section 2032A demonstrates, Congress intended that "the notice of election and the recapture agreement must be included with the estate tax return, as filed. * * *" H.R. Conf.Rep. 98–861, 98th Cong., 2d Sess. 1241 (1984), U.S.Code Cong. & Admin.News 1984, pp. 697, 1929. As explained above, "[o]ne of the requirements for making a valid election is the filing *with the estate tax return* [of] a written [recapture] agreement * * *." H.R.Rep. 94–1380, 94th Cong., 2d

Sess. at 27 (emphasis supplied), U.S.Code Cong. & Admin.News 1976, p. 3381.

### 2. Application of Section 1421

■ In *Prussner*, 896 F.2d 218 (7th Cir. 1990), a unanimous Court, sitting *en banc*, rejected all the arguments made by the Grimes estate as to the proper interpretation of Section 2032A and the accompanying Treasury Regulation. However, *Prussner* concluded that the executrix in that case could claim relief under Section 1421 of the Tax Reform Act of 1986. Under Section 1421, the failure to file a recapture agreement with an estate tax return is not fatal where the estate tax return filed by an executor contains all the information with respect to the election that the return requires. *Id.* at 225.

But Section 1421 is of no avail to the Grimes estate since the executrix never relied on that provision as a ground for validating its defective election in either the Tax Court or this Court. We have repeatedly held that issues and arguments not raised before the lower court cannot be raised for the first time on appeal. *E.g., Textile Banking Co., Inc. v. Rentschler,* 657 F.2d 844, 853 (7th Cir.1981). This axiom applies with equal force in a case in which a taxpayer fails to rely on a particular Section of the Tax Reform Act in the trial court. It is simply too late for the estate to invoke an entirely new Section of the Act. *Helvering v. Wood,* 309 U.S. 344, 348–349, 60 S.Ct. 551, 553, 84 L.Ed. 796. Section 1421 was not even mentioned in petitioner's initial brief in this Court, nor in its reply brief, so that it is not properly before this Court. *Bugg v. International Union of Indus. Workers,* 674 F.2d 595, 598 n. 4 (7th Cir.1982), certiorari denied and appeal dismissed, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43. Unlike the executrix in *Prussner,* who raised Section 1421 in the trial court and on appeal, the Grimes estate may not rely on Section 1421, although in *Prussner* we permitted a qualified use valuation based on the provision. The executrix, as a result of *Prussner,* raises Section 1421 for the first time in her supplemental brief. Section 1421 existed before the decision in *Prussner,* and the executrix had deliberately decided not to advance Section

1421 in support of her argument. See Petitioner's Supplemental Br. 5. Therefore, petitioner's recapture agreement argument must fail.

### B. *The Grimeses' joint and mutual will prevented marital deduction.*

■ In the second part of her appeal, the executrix claims that the Tax Court misapplied Section 2056 of the Code (26 U.S.C. § 2056), the marital deduction provision, which allows property to pass to a surviving spouse without the imposition of estate tax. As noted above, the marital deduction is unavailable if the property interest at issue is terminable, such that it will escape taxation as part of the decedent's estate and the surviving spouse's estate. Section 2056, however, permits a marital deduction for life estates with power of appointment in the surviving spouse. This exception allows the deduction if the will passes a life estate to the surviving spouse in all or a part of the income generated from the property bequeathed, so long as the income is payable annually or at more frequent intervals. The Code and accompanying regulations further require that a general power of appointment in favor of the surviving spouse or his or her estate accompany the property interest. Treas.Regs. §§ 20.2056(b)–5(a)(1) and (3). This means that the surviving spouse must possess the exclusive power to appoint, such that no other person has power to appoint any part of the interest. 26 U.S.C. § 2056(b)(5).

Therefore under the exception, the executrix would be entitled to claim a marital deduction if she were granted a life estate in the personal property accompanied by a general power of appointment. We must determine whether the will fulfills the statutory requirements. The pertinent provisions of the Grimeses' will are as follows:

MUTUAL
Last Will and Testament
of
CHARLES E. GRIMES
AND ELIZABETH J. GRIMES

WE, CHARLES E. GRIMES and ELIZABETH J. GRIMES, husband and wife,

of Santa Anna Township, DeWitt County, Illinois, each being of sound mind and memory, do hereby make, publish and declare this to be the Mutual Last Will and Testament of each and both of us, and hereby revoke any and all wills and codicils heretofore made by us, or either of us.

\* \* \* \* \* \*

SECOND: We, and each of us, give and bequeath to the survivor of us all the personal property owned by the first of us to die, absolutely. Each of us gives and devises to the survivor of us a life estate in the real estate owned by the first of us to die, with remainder in fee to our four children, Beverly Jane, [*sic*] Drummond, Carl E. Grimes, David C. Grimes and Alan R. Grimes, share and share alike. In the event we should die as a result of a common catastrophe, or in any event at the death of the survivor of us, then all property both personal and real of ours or the survivor of us as the case may be to our said four children, share and share alike, and in the event that any of our said four children shall fail to survive us, or the survivor of us, as the case may be, then his, her, or their respective heirs of the body shall take the share, he, she or they would have taken hereunder had he, she, or they survived us, or the survivor of us.

█ Under Illinois law, a joint and mutual will binds the surviving testator, giving the survivor only the equivalent of a life estate in the property. *Pyle by Straub v. United States,* 766 F.2d 1141, 1142 (7th Cir.1985), certiorari denied, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311. Moreover, unless there is a reservation of a specific power to the contrary, the surviving life tenant is powerless to dispose of property which is bequeathed to remaindermen under a joint and mutual will. See, *e.g., First United Presbyterian Church v. Christenson,* 64 Ill.2d 491, 499, 1 Ill.Dec. 344, 348, 356 N.E.2d 532, 536 (1976). Thus Illinois law (albeit somewhat peculiarly) presumes that the surviving spouse is under an obligation to preserve the estate unless the will contains specific language to the con-

trary. *Grimes v. Commissioner,* 851 F.2d 1005, 1006–1007 (7th Cir.1988) (holding the will of Charles Grimes's father to be restricted); *Pyle by Straub,* 766 F.2d at 1143.

The Grimeses executed a joint and mutual will in Illinois. Therefore, the will of the son is subject to the same interpretation as the will of his father: "[T]he survivor's ability to treat with or dispose of the property is restricted unless the will clearly states otherwise." *Grimes v. Commissioner,* 851 F.2d at 1007. The Tax Court correctly analyzed Illinois law and held that the will of Charles Grimes and his wife Elizabeth met the various tests delineated by Illinois courts for a joint and mutual will.

The executrix contends that the will escapes the anti-alienation requirement under Illinois law, falling within the exception, because the second paragraph of the will bequeaths all property to the surviving spouse "absolutely." This language, according to the surviving spouse, negates any restriction on the use of personal property. This overlooks the third sentence of the will which provides that at the death of the survivor all personal and real property is to go to the Grimeses' four children, and the Illinois courts have refused to construe the term "absolute" as defeating the distribution plan of the bequest to the children. *Helms v. Darmstatter,* 34 Ill.2d 295, 301–302, 215 N.E.2d 245, 247 (1966) (holding that the word "absolute" did not permit the survivor to ignore the disposition to a family member; rather, the survivor only had an absolute right to the entire *corpus* for life, and at death the property passes in accordance with the terms of the will); *Rauch v. Rauch,* 112 Ill.App.3d 198, 201–202, 67 Ill.Dec. 785, 788, 445 N.E.2d 77, 80 (4th Dist.1983) ("where equal treatment for the family is provided in the will, it would be illogical to interpret the will as giving the survivor the power to upset that dispositive scheme"). Consequently, the joint and mutual will did not give the executrix the necessary power of appointment over her life estate to qualify for the marital deduction. Under Illinois law, her power to dispose of the personal property was re-

stricted rather than exercisable "in all events" as required under Section 2056(b)(5) of the Code (26 U.S.C. § 2056(b)(5)).

## III. CONCLUSION

While we affirm the decision of the Tax Court and deny both the qualified use and marital deductions claimed by the estate, we note that slip-ups by the Grimeses' lawyer required this result. Had the executrix filed the already-signed recapture agreement along with her estate tax return, all of the requirements for the Section 2032A qualified use real estate deduction would have been satisfied. Plainly, their lawyer intended for the Grimeses to receive more favorable tax treatment under this provision. Regrettably for the executrix, he overlooked an integral requirement of a Section 2032A election.

As for the marital deduction for personal property under Section 2056, the Grimeses' lawyer may have intended the will to convey a terminable interest with power of appointment to the surviving spouse. But the law in Illinois is undeniably clear. If the surviving spouse is to have an unrestricted power to dispose of the property, then the will must expressly provide as such. Instead, the joint and mutual will bequeathed the personalty to the four Grimes children upon the death of the surviving spouse, so that the executrix's power to dispose of the life estate was not absolute and did not qualify for the marital deduction.

The decision of the Tax Court is affirmed.