Estate of Loren DOHERTY, Deceased, Dan A. Doherty, Personal Representative, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 91–9013.

United States Court of Appeals, Tenth Circuit.

Dec. 31, 1992.

Curtis W. Schwartz of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Santa Fe, NM, for petitioner-appellant.

Sara S. Holderness, Atty. for the Tax Div., Dept. of Justice, DC, with her on the briefs Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen and Gayle P. Miller, Attys., Tax Div., Dept. of Justice, DC, for respondent-appellee.

Before KELLY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BROWN, District Judge.*

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

McWILLIAMS, Senior Circuit Judge.

This case concerns a deficiency notice filed by the Commissioner of the Internal Revenue Service (IRS) in a federal estate tax proceeding. Dan A. Doherty, as personal representative of his deceased wife's estate, filed a timely federal estate tax return. On that return, he made an election that certain ranch land belonging to his deceased wife be valued at its "special use value," as opposed to its "fair market value."[1] The Commissioner ruled that the personal representative's special use valuation election was invalid and accordingly sent the estate a notice of deficiency for estate taxes amounting to $205,884. The estate then filed a petition in the Tax Court contesting the determination.

The case was submitted to the Tax Court upon stipulated facts, and the Tax Court upheld the position of the Commissioner that the special use valuation was not available to the estate and, after some minor adjustments which are not here in dispute, held that there was a deficiency for estate taxes due amounting to $174,936. *Estate of Loren Doherty v. Commissioner*, 95 T.C. 446, 452–59 (1990). Pursuant to 26 U.S.C. § 7482(a)(1) (Supp.1992), the estate seeks review in this court of the Tax Court's decision.

### FACTS

As indicated, the case was submitted to the Tax Court on stipulated facts. From the stipulation we learn that Dan and Loren Doherty, husband and wife, at the time of Loren's death, and for many years prior thereto, were living on their ranch in rural northeastern New Mexico, near the small town of Folsom, not far from the Colorado–New Mexico border. Within a few weeks after Loren's death on April 17, 1984, a probate proceeding was commenced in the district court for Union County, New Mexico, wherein Loren's will was admitted to probate and her husband, Dan Doherty, was appointed personal representative.

On the date of Loren's death, she and her husband owned, as community property, 16,601 shares of the 24,000 issued and outstanding shares of Ganado, Inc., a New Mexico corporation. Ganado, Inc., in turn, owned a 50% interest in a partnership called Doherty Investment Company. Partnership assets included, *inter alia*, ownership in fee simple of 25,400 acres in Union County, New Mexico and 18,045 acres in Las Animas County, Colorado, as well as state grazing leases covering 8,158 acres in New Mexico and 1,120 acres in Colorado.

As indicated, Dan Doherty, personal representative for his deceased wife's estate, filed a timely United States Estate Tax Return, Form 706, which was received by the IRS on January 14, 1985. On page 2 of the return, under the heading, "Elections by the Executor," question no. 2 read as follows: "Do you elect the special use valuation?" To that question, Doherty, by his "X" in a "yes" box, declared that he did elect special use valuation. Question no. 2 further provided that if the answer to question no. 2 was "yes," then the estate must "complete and attach Schedule N and the

---

1. Prior to 1976, the general rule was that a decedent's real property should be valued, for estate tax purposes, at its fair market value, which meant the fair market value for its "highest and best use." H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. 21 (1976) *reprinted in* 1976 U.S.C.C.A.N. 2897, 3356, 3375. In 1976, as a part of the Tax Reform Act of 1976, the Internal Revenue Code was amended to allow an alternate method for valuing real property used "as a farm for farming purposes, or ... use[d] in a trade or business other than the trade or business of farming." Tax Reform Act of 1976, Pub.L. No. 94–455, § 2003, 90 Stat. 1857 (codified as 26 U.S.C. § 2032A (1976), *as amended by* Deficit Reduction Act of 1984). The alternate method of valuation has become known as "spe-

cial use valuation," which allows valuation of farm and ranch land to be based upon its use as farm or ranch land, rather than valued at its fair market value for its highest or best use, which, in a given case, might be as a subdivision or a shopping center. House Report 94–1380 21–22 *reprinted in* 1976 U.S.C.C.A.N. 3375–76. The reason behind this change was Congress' desire to "preserve the family farm and other family businesses." *Id.* at 5 *reprinted in* 1976 U.S.C.C.A.N. 3359.

At the same time, Congress empowered the Secretary of the Treasury to promulgate rules and regulations concerning special use valuation election. 26 U.S.C. § 2032A(d)(1) (1976), *as amended by* Deficit Reduction Act of 1984.

agreements required by the instructions to Schedule N."

Doherty completed and attached Schedule N to the estate tax return, addressing all 14 items required by the Treasury regulation for a special use valuation election. He addressed these items on a separate attachment entitled "Section 2032A Election and Statement." Doherty also attached a recapture agreement. The one response on the Section 2032A attachment to Schedule N that the Commissioner later held constituted an incurable defect to a valid special use valuation election was Doherty's response to Item "VIII." This item asked for "[c]opies of written appraisals of F.M.V." To that request, Doherty responded: "There are none. Value determined by Personal Representative. See attached for comparable rental value." [2]

Apparently, the first written contact between the IRS and Doherty occurred some two years after Doherty filed the federal estate tax return. Pamelya Herndon, an attorney in the estate tax division of the IRS, sent an official letter to Doherty. In that letter, dated February 20, 1987, she informed Doherty that the estate tax return had been assigned to her for audit, and she requested appraisals for certain properties for which special use valuation had not been sought.

The next letter, dated March 6, 1987, from Pamelya Herndon was sent to Doherty's attorney. The pertinent parts read as follows:

Pursuant to our recent telephone conversation, regarding the above-named estate's election to value the decedent's farm property pursuant to the provisions of Section 2032A of the Internal Revenue Code, I submit the following.

When the Doherty estate tax return was initially filed, the estate did not provide a copy of an appraisal of the property upon which the Section 2032A election was made. Under the Tax Reform Act of 1984 (P.L. 98–369), if a special use valua-

tion election is made, and the estate tax return that was filed evidences substantial compliance with the requirements of the regulations relating to special use valuation, the executor of the decedent's estate has a reasonable period of time (not exceeding 90 days) in which to cure any technical defects or flaws in the election that would otherwise prevent it from being valid.

The Conference Committee Report on P.L. 98–369 provides illustrations of the type of information that may be supplied in order to perfect a special use valuation election. The type of information that may be perfected includes social security numbers, addresses of qualified heirs and copies of written appraisals of the property that was specially valued. However, the Conference Committee Report indicates that P.L. 98–369 does not permit written appraisals to be obtained after the estate tax return is filed. Rather, the law only permits the submission of previously obtained appraisals. In Item VIII of the estate's "Section 2032A Election and Statement" is the following statement:

Copies of written appraisal of F.M.V. There are none. Value determined by Personal Representative. See attached for comparable rental value.

It is the Government's position that since the estate did not provide a copy of a written appraisal of the decedent's farm property at the time the estate tax return was initially filed, and since there was no written appraisal obtained prior to the time that the return was filed, the estate's special use valuation election is defective. Accordingly, the special use value generally accorded an estate pursuant [to] the provisions of Section 2032A of the Internal Revenue Code is not available to the Doherty Estate.

(emphasis added).

Thereafter, Doherty had appraisals for the fair market values of the Las Animas

---

**2.** Schedule B–1, which was attached to the estate tax return, set forth both the fair market value and the special use value of the stock of Ganado, Inc., as determined by Dan Doherty.

The same information was provided in Schedule B–2 with respect to the assets of Doherty Investment Company.

County, Colorado, and Union County, New Mexico, properties made by a third party professional.[3] These appraisals were dated July 15, 1987 and were sent by mail to the IRS on July 24, 1987.

On July 28, 1987, Thomas F. Eagan, another attorney in the estate tax division, sent a letter to Doherty's attorney. In that letter, Eagan advised Doherty that the estate's tax return had been reassigned to him for examination. He also requested "a copy of the appraisal which is being made of the ranchland held by Doherty Investment Company partnership."[4] Eagan repeated the IRS's position that the special use election was invalid because of Doherty's failure to attach a previously obtained fair market appraisal to the estate tax return, and, although he invited comment to this position, he nonetheless informed Doherty that the defect was viewed by the IRS as incurable. Notwithstanding, Eagan went on to write as follows:

> Even if the lack of a written appraisal of fair market value could be perfected, both section 2032A(d)(3) and section 1421(b) of the Tax Reform Act of 1986 require that the defect be perfected within 90 days from the date of receipt of notice from the Service. It has now been more than 90 days since your letter of March 25, 1987, responding to the letter [of] March 6, 1987, from Pamelya Herndon concerning the necessity of a written appraisal.[5]

### HISTORY OF SPECIAL USE VALUATION

■ The value of a decedent's gross estate is its fair market value as of the date of the decedent's death or as of six months thereafter if the alternate valuation date is selected. 26 C.F.R. 20.2031–1(b) (1992). As indicated in footnote 1, *supra,* as part of the Tax Reform Act of 1976, the Internal Revenue Code was amended to allow an alternate method for valuing real property used as a "farm for farming purposes, or ... use[d] in a trade or business other than the trade or business of farming." Tax Reform Act of 1976, Pub.L. No. 94–455, § 2003, 90 Stat. 1857 (codified as 26 U.S.C. § 2032A(b)(2) (1976), *as amended by* Deficit Reduction Act of 1984). This alternate method of valuing farmland has become known as "special use valuation." Special use valuation allows real property used for farming and ranching to be valued based upon its use as a farm or ranch, rather than based on its fair market value. H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. 21–22 (1976) *reprinted in* 1976 U.S.C.C.A.N. 3375–76. The congressional intent behind this 1976 amendment was to grant relief to heirs of family farms and ranches who, if the property was valued at its fair market value for its highest and best use, might, in a given case, have to sell the farm to pay the tax. *Id.; see also Mangels v. United States,* 828 F.2d 1324, 1326 (8th Cir.1987); *Estate of Sherrod v. Commissioner,* 774 F.2d 1057, 1061–62 (11th Cir.), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986).

■ Special use valuation is not automatic—rather, it is elective. In this regard, 26 U.S.C. § 2032A(d)(1) (Supp.1992) currently reads as follows:

> (1) ELECTION.—The election under this section shall be made on the return of the tax imposed by section 2001. Such election shall be made in such manner as the Secretary shall by regulations prescribe. Such an election, once made, shall be irrevocable.

Treasury regulation 26 C.F.R. § 20.-2032A–8(a)(3) (1992) provides that a separate "notice of election" must be filed with an estate tax return and that the notice of election must address fourteen specific items, one of which is "[c]opies of written appraisals of the fair market value of the real property," 26 C.F.R. § 20.2032A–

---

**3.** The Commissioner has not challenged the figures in these appraisal fixing the fair market value of these properties, for which Doherty sought special use valuation. Nor has the Commissioner challenged the special use values determined by Doherty in Schedule B–2.

**4.** Apparently at the time Eagan wrote his July 28, 1987, letter, he had not yet received the appraisals sent to the IRS by Doherty on July 24, 1987.

**5.** The March 25, 1987 letter to which Eagan refers is not in the record before this court.

454

8(a)(3)(ix) (1992). It is this particular item that generates the present controversy.

In 1984, as a part of the Deficit Reduction Act of 1984, Congress amended 26 U.S.C. § 2032A retroactively to 1977. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 1025(b)(1), 98 Stat. 1030 (referred to as a 1984 historical and legislative note to § 2032A regarding the effective date of the 1984 amendment). The amended § 2032A provides an electing estate, that substantially complies with the Treasury regulation, time to correct technical deficiencies once notified by the IRS. Pub.L. No. 98–369, § 1025(a) (codified as 26 U.S.C. § 2032A(d)(3)). Specifically, the statute provides:

(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.—The Secretary shall prescribe procedures which provide that in any case in which—

(A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and

(B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

(i) the notice of election, as filed, does not contain all required information, or

(ii) signatures of 1 or more persons required to enter into the agreement described in paragraph (2) are not included on the agreement as filed, or the agreement does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

26 U.S.C. § 2032A(d)(3) (Supp.1992).

In 1986, Congress, as a part of the Tax Reform Act of 1986, addressed the special use valuation election issue again in § 1421. Section 1421 provides as follows:

SEC. 1421. INFORMATION NECESSARY FOR VALID SPECIAL USE VALUATION ELECTION.

(a) IN GENERAL.—In the case of any decedent dying before January 1, 1986, if the executor—

(1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code within the time prescribed for filing such return (including extensions thereof), and

(2) provided substantially all the information with respect to such election required on such return of tax,

such election shall be a valid election for purposes of section 2032A of such Code.

(b) EXECUTOR MUST PROVIDE INFORMATION.—An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of the enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.

Tax Reform Act of 1986, Pub.L. No. 99–514, § 1421(a) and (b), 100 Stat. 2716 (1986).

DISCUSSION

The Tax Court held that Doherty, the personal representative, had not met the "substantial compliance" requirement of 26 U.S.C. § 2032A(d)(3)(B), *Estate of Loren Doherty v. Commissioner*, 95 T.C. 446, 455 (1990), and that such foreclosed "any relief under the 90–day provision" of § 2032A(d)(3), *id.* at 457.[6] The Tax Court

---

**6.** The Tax Court agreed with the Commissioner that Doherty's failure to attach to Schedule N a previously obtained appraisal of the estate property at its fair market value was, in effect, an incurable defect. Based on a Conference Report, they contend that the 1984 amendment to 26 U.S.C. § 2032A(d)(3) permits the untimely filing of an appraisal at fair market value obtained *prior* to the filing of the estate tax return, but does not permit the untimely filing of an appraisal obtained *after* the filing of the estate

tax return. *See Estate of Loren Doherty*, 95 T.C. at 456–57 (citing H.Rep. No. 98–861 (Conf.) (1984), 1984–3 C.B. (Vol. 2) 495). In this regard, Herndon's and Eagan's letters also indicate that Doherty could not submit appraisals conducted and made after the date the estate tax return was filed. As noted in the facts above, however, Doherty sent the IRS fair market value appraisals on July 24, 1987.

also held that the estate had not met the "provide substantially all" requirement of § 1421(a)(2) of the Tax Reform Act of 1986. *Id.* at 459. This was so because the Form 706 the estate filed was not the form the statute intended to address and the estate did not meet the substantial compliance requirement of § 2032A(d)(3)(B). *Id.* Given these holdings, the Tax Court did not make any findings as to whether the IRS notified Doherty of a deficiency in his purported election or whether Doherty "perfected" his deficient election within the 90–day period provided by § 2032A(d)(3).[7] *Id.* at 457. Nor did the Tax Court address whether Doherty could perfect his election under § 1421(b) of the Tax Reform Act of 1986.[8]

It is agreed that Doherty, at the time he filed the federal estate tax return for his deceased wife's estate, elected to have certain of his deceased wife's estate valued at its special use value, as opposed to its fair market value. It is also agreed that contemporaneous with the filing of the estate tax form, Doherty filed a Schedule N with a "Section 2032A Election and Statement" attachment. And it is further agreed that Doherty's responses to all but item VIII on

this attachment were satisfactory and to which the IRS had no objection.[9]

■ So, the issue to be resolved by this court is whether Doherty's failure to attach to Schedule N a previously obtained appraisal of the fair market value of the property sought to be valued at its special use value precludes him from availing the estate of the provisions of § 1421(a) of the Tax Reform Act of 1986. This is a question of law, subject to *de novo* review. *See Woodbury v. Commissioner*, 900 F.2d 1457, 1459 (10th Cir.1990).

As indicated, § 1421(a) of the Tax Reform Act of 1986 provides that in the case of any decedent dying before January 1, 1986, if the executor of the decedent's estate makes a timely election for special use valuation and provides "substantially all the information with respect to such election required on such return of tax," such election shall be valid. However, § 1421(b) of the Tax Reform Act of 1986 conditions the validity of such an election. Section 1421(b) provides that an otherwise valid election shall be invalid if the Secretary requests information as to the election from the executor and the executor does not comply within 90 days after receiving the request.

---

This court need not address whether Doherty can obtain relief under § 2032A because, as noted below, § 1421(a) of the Tax Reform Act of 1986 provides relief.

7. In this regard, the Tax Court commented as follows: "The parties disagree about whether petitioner perfected its deficient election within the 90–day period provided by section 2032A(d)(3).... Petitioner's failure to establish substantial compliance with the regulations, however, forecloses any relief under the 90–day provision" of § 2032A(d)(3). *Id.* at 457.

8. Section 1421(b) of the Tax Reform Act of 1986 provides that an estate has 90 days from the receipt of a request from the IRS to provide "information ... with respect to such election" otherwise the election is invalid. We need not address whether the estate received a request, whether the IRS made such a request, or whether the estate responded within the 90–day period required by § 1421(b) of the Tax Reform Act of 1986 because the Tax Court did not address this issue and the facts are disputed. *See Estate of Loren Doherty*, 95 T.C. at 457.

9. The estate provided, as required by 26 C.F.R. 20.2032A–8(a)(3) (1992): Loren Doherty's name;

the properties' qualified use; the properties to be specially valued; fair market value of the specially valued properties; an adjusted value under 26 U.S.C. § 2032A(b)(3)(B); the personal property that was passed to qualified heirs and the qualified use of this property; the adjusted value of the gross estate as defined by 26 U.S.C. § 2032A(b)(3)(A); a statement indicating that Loren and Dan Doherty owned the special use properties 8 years prior to Loren's death; a statement that the properties were used for ranching during this period; the names, addresses, taxpayer identification numbers, and relationship to Loren Doherty of each person interested in the special use properties plus the fair market and qualified use value of property passing to each person listed; affidavits regarding material participation of the property; and a legal description of the property to be specially valued. While the estate misnumbered the items and did not provide a line item for 26 C.F.R. 20.2032A–8(a)(3)(viii), which requires information on the method used to calculate special use valuation, this item is addressed in item "IV.(b)" where the estate gives the exact calculation used to determine the special use value.

We hold that Doherty's failure to attach to the federal estate tax return, as a part of Schedule N, a previously obtained appraisal of the subject property at its fair market value is not of such a nature to preclude Doherty from availing the estate of the provisions of § 1421(a) of the Tax Reform Act of 1986. In other words, contrary to the Commissioner's position, which was upheld by the Tax Court, Doherty in his notice of election "provided *substantially all* the information with respect to such election required on such return of tax." 1421(a)(2) of the Tax Reform Act of 1986 (emphasis added).

In reaching this conclusion, we are greatly persuaded by the rationale of *Prussner v. United States*, 896 F.2d 218 (7th Cir. 1990) (en banc). *Prussner* was not a case where the executor failed to attach to Schedule N a previously obtained appraisal of the property sought to be valued at its special use. *Prussner* was a case where the executor failed to attach to the estate tax return a "recapture agreement." [10] The lawyer for the executor in *Prussner* did attach a letter stating "unfortunately, the agreement ... was not fully executed at the time because the heirs reside throughout the United States. I hope to send you this agreement within the next few weeks." *Id.* at 221. Months later the attorney filed a recapture agreement which complied with the Treasury regulation. The IRS disallowed the special use valuation election because the recapture agreement had not been attached to the estate tax return when it was filed. The executor paid the additional estate tax and brought suit in the district court for a refund. The district court held that the explanatory letter from the executor's attorney was a form of a recapture agreement and that

the executor was entitled to relief under 26 U.S.C. § 2032A(d)(3).

On appeal, the Seventh Circuit, sitting en banc, held that although the executor was not entitled to relief under § 2032A(d)(3), he was entitled to relief under § 1421(a) of the Tax Reform Act of 1986 and affirmed the district court on this ground. *Id.* at 225. In so doing, the Seventh Circuit held that "information" within the meaning of § 1421(a)(2) did not mean information on the return AND attachments like the recapture agreement. *Id.* at 225–26.[11] The Seventh Circuit reasoned that

"[t]here is nothing about filing a recapture agreement or for that matter a notice of election [on the tax return]. All that is required (in marked contrast to the Treasury regulation defining valid election for purposes of section 2032A) is the making of an election *on the estate tax return*—that is, the marking of the box for the election. The taxpayer who checks the box—that was done here— and provides substantially all the information that the return requires with respect to the election is home free."

*Id.* at 225 (emphasis in original).

In the instant case, Doherty marked the box for the election on the estate's tax return, which indicated special use valuation election, and he provided substantially all the information as to the election the tax return required. We believe, therefore, that the present case is comparable to *Prussner*. In *Prussner*, the executor failed to attach to the return a recapture agreement, and, in the instant case, Doherty failed to attach to the return an appraisal. Accordingly, we reach the same conclusion here that the Seventh Circuit reached in *Prussner*: Doherty made a valid election for special use valuation under the provi-

**10.** 26 C.F.R. 20.2032A–8(c)(1) (1992) requires an agreement signed by all parties holding an interest in the subject property sought to be valued as its special use whereby the signers consent to personal liability for an additional estate tax should there by any "early dispositions of the property or early cessation of the qualified use."

**11.** In *McDonald v. Commissioner*, 853 F.2d 1494, 1498 (8th Cir.1988), *cert. denied sub nom., Cor-*

*nelius v. Commissioner*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), the Eighth Circuit stated that the principal difference between the 1984 amendment and the 1986 amendment is that the former requires "substantial compliance" with the Treasury regulation whereas the latter requires an executor to provide "substantially all" the information required by the tax return and its instructions.

sions of § 1421(a) of the Tax Reform Act of 1986.[12]

Like the Seventh Circuit, we are not persuaded by *Foss v. United States*, 865 F.2d 178 (8th Cir.1989), *reh'g denied*, and *McDonald v. Commissioner*, 853 F.2d 1494 (8th Cir.1988), *cert. denied sub nom., Cornelius v. Commissioner*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).[13]

The decision of the Tax Court is reversed and the case is remanded with the direction that further proceedings be consonant with the views expressed herein.

---

12. As the Seventh Circuit did in *Prussner*, we reject the Tax Court's and the Commissioner's suggestion that § 1421(a) of the Tax Reform Act of 1986 applies only to estates that were misled by a faulty version of Form 706, namely, the 1982 form, which, it is agreed, was not the form used by Doherty in the instant case. *See Prussner* at 226–28. Section 1421(a) of the Tax Reform Act of 1986 applies to estates where the decedent died before January 1, 1986, which is the case here because Loren Doherty died on April 17, 1984.

13. Neither *Foss* or *McDonald* involved fair market value appraisals. In *McDonald*, the recapture agreement filed with the estate tax return was not signed by any person having an interest in the property in question as required by the Treasury regulation. *McDonald*, 853 F.2d at 1497. Such being the case, the Eighth Circuit in

*McDonald* held that the executor could not avail the estate of the provisions of the 1984 amendment and stated further that since "[t]he Estate has not argued that the instructions followed in preparation of the return varied from the regulation requirements ... we conclude that the 1986 Amendment provides the Estate no more relief than did the 1984 Amendment." *Id.* at 1498. *Foss* involved a situation where the estate failed to attach both a recapture agreement and a notice of election as required by the tax return's instructions. *Foss*, 865 F.2d at 180. The panel in *Foss* followed *McDonald's* reasoning that § 1421(a) required substantially all the information on the tax return and its instructions, *id.* at 181, commenting merely that "one panel of this court cannot reverse another panel, even if it were inclined to do so," *id.*