United States Court of Appeals,

Eleventh Circuit.

No. 95-2370.

In re ESTATE OF Charles R. LUCAS, Deceased, Plaintiff.

Roy H. LUCAS; Howard C. Lucas, Co-Personal Representatives of the Estate of Charles R. Lucas, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Oct. 23, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-622-CIV-T-25A), Henry Lee Adams, Jr., District Judge.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and WOOD[*], Senior Circuit Judge.

ANDERSON, Circuit Judge:

In this federal estate tax case, the government determined that the Estate of Charles R. Lucas (the Estate) was not entitled to "special use valuation" of certain family farm property pursuant to section 2032A of the Internal Revenue Code. *See* 26 U.S.C. § 2032A. The first issue on appeal is whether the Estate's initial effort to elect special use valuation was sufficient to constitute "substantial compliance" with the applicable regulations, thereby entitling the Estate to perfect its election upon notice from the I.R.S. that the original election was deficient. *See* 26 U.S.C. § 2032A(d)(3). A related issue is also presented: whether the Estate provided "substantially all the information" required on the estate tax return with respect to the election for special use

---

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

valuation, such that the I.R.S. should have allowed the Estate to perfect its previously deficient election. *See* Tax Reform Act of 1986, Pub.L. No. 99-514, § 1421, 100 Stat. 2085, 2716, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100-647, § 1014(f), 102 Stat. 3342, 3562. We find that the Estate's election for special use valuation did not substantially comply with the applicable regulations, nor did it provide substantially all the information required on the tax return. Accordingly, we affirm the district court's entry of judgment in favor of the government.

## I. FACTS AND PROCEDURAL HISTORY

Charles R. Lucas (decedent) died testate on December 15, 1985. Howard C. Lucas and Roy H. Lucas are the decedent's sons and the co-personal representatives of his estate. Under their father's will, they are also the only legatees to certain Polk County, Florida farm land, the valuation of which is at issue in this case.

After receiving an extension from the I.R.S., the Estate filed a timely federal estate tax return on October 16, 1986. The Estate used the March 1985 version of Form 706. On line 2 of page 2 of the form, in response to the question, "Do you elect special use valuation?," the Estate failed to check either the "yes" or "no" box. Immediately below the question, Form 706 instructs that, "If "Yes,' complete and attach Schedule N and the agreements required by the instructions to Schedule N."

Despite its failure to check the "Yes" box on page 2 of the return, the Estate completed a Schedule N. Schedule N of Form 706 (March 1985), entitled "Section 2032A Valuation," directs the

taxpayer: "Enter the requested information for each party who received any interest in the specially valued property. Also complete and attach the required agreements described in the instructions."[1] The Estate's Schedule N lists Roy H. Lucas and Howard C. Lucas, the decedent's two sons, as the parties with an interest in the specially valued property. Under the preprinted headings "Fair market value" and "Special use value," the amounts $187,500 and $40,000, respectively, are listed for Roy Lucas. The same amounts are listed for Howard Lucas.[2]

---

[1]The instruction booklet accompanying the March 1985 version of Form 706 contains a section entitled "Instructions for Schedule N.—Section 2032A Valuation." This section instructs the taxpayer how to complete the Schedule N, lists the items of information that must be included in a required attachment called the "notice of election," and describes in detail the required "agreement to special valuation by persons with an interest in property."

[2]On Schedule A of Form 706, where the taxpayer is required to list and describe all of its real property, the Estate included a description of the property that was to be specially valued. Item numbers 3A, 3B, and 3C are described as follows:

> 3A Parcel # 2—West parcel consisting of 30.2 + A. of citrus grove and woodlands fronting on the South side of Crystal Beach Rd., and along the North shore of Lake Millsite. The grove consists of 7.3 + A., an old frame house occupies about 3A. near the N.W. end of parcel. Winter Haven, Florida.

> 3B The remaining 22.6 A. is woodland used as native cattle range in conjunction with adjacant [sic] improved pasture owned by other members of Lucas family. Agricultural use value of this parcel. Winter Haven, Florida.

> 3C The grove is a very old planting, substantial foot rot, ytd. blite or other die-back associated with old plantings.

> The highest and best use of parcels 3B and 3C is building lots—$375,000 but the agricultureal [sic] use valuse [sic] is.... 80,000

The Estate attached to its return a document entitled "Affidavit from Personal Representatives," which purported to serve as the Estate's notice of election. This document contained most, but not all, of the fourteen items of information required by the applicable Treasury regulations to be included in the notice of election. *See* 26 C.F.R. § 20.2032A-8(a)(3).[3] Significantly, the Estate did *not* attach an "agreement to special valuation by persons with an interest in property," also called a recapture agreement, to its return. *See* 26 U.S.C. § 2032A(a)(1)(B) and (d)(2); 26 C.F.R. § 20.2032A-8(a)(3) and (c).

On audit of the estate tax return, the I.R.S. advised the Estate that the attempted election for special use valuation was defective, the primary reason being the Estate's failure to attach a recapture agreement. Subsequently, and within ninety days following the notice from the I.R.S. about the defective election, the Estate submitted a recapture agreement that fully complied with the requirements of the regulations. Nevertheless, the I.R.S.

_____

This property qualifies under Section 2032 A/S [sic] of the I.R.C.

Winter Haven, Florida.

[3]The Estate's notice of election did not contain a "statement that the decedent and/or a member of his or her family has owned all specially valued real property for at least 5 years of the 8 years immediately preceding the date of the decedent's death," as required by 26 C.F.R. § 20.2032A-8(a)(3)(x). Nor did it contain a statement of "[a]ny periods during the 8 year period preceding the date of the decedent's death during which the decedent or a member of his or her family did not own the property, use it in a qualified use, or materially participate in the operation of the farm or other business ...," as required by 26 C.F.R. § 20.2032A-8(a)(3)(xi). With respect to these items, the notice of election stated "affidavit attached." However, no additional affidavits were attached.

denied special use valuation for the properties in question.  The I.R.S. took the position that the Estate's initial submission did not substantially comply with the applicable regulations, and the Estate therefore was not eligible subsequently to perfect its defective election under § 2032A(d)(3).  The I.R.S. increased the amount of the gross estate, based on the excess of the fair market value of the real property in question over its value as farm land, and assessed a tax deficiency in the amount of $87,131.

The Estate paid the assessment, filed a claim for a refund, and when the claim was denied by the I.R.S., filed a complaint in federal district court.  A jury trial was conducted.  At the close of the evidence, the district court awarded judgment to the government as a matter of law, without sending the case to the jury.  This appeal followed.

## II. DISCUSSION

A. *Introduction:  Special Use Valuation Under Internal Revenue Code § 2032A*

For purposes of calculating the federal estate tax, the value of real property included in the gross estate of a decedent is generally its fair market value.  *See* 26 U.S.C. § 2031(a);  26 C.F.R. § 20.2031-1(b).  In 1976, however, Congress authorized an alternate valuation method, "special use valuation," for certain family farms and other family businesses.  Tax Reform Act of 1976, Pub.L. No. 94-455, § 2003, 90 Stat. 1520, 1856-62 (codified, as amended, at 26 U.S.C. § 2032A).  Special use valuation allows qualified real property to be valued according to its actual use (e.g., as a farm), rather than at its fair market value based on its highest and best use (e.g., as a housing development or a

shopping mall).  The rationale underlying § 2032A is to reduce the tax burden on the estate's heirs, so that they are not forced to sell the family farm or business in order to pay the high estate taxes that would result if the property were taxed at its fair market value.  *Estate of Sherrod v. Commissioner,* 774 F.2d 1057, 1061-62 (11th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986);  *Estate of Doherty v. Commissioner,* 982 F.2d 450, 453 (10th Cir.1992);  H.R.Rep. No. 94-1380, 94th Cong., 2d Sess., 21-22 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 2897, 3356, 3375-76.

To qualify for special use valuation, the estate must satisfy several substantive conditions.  The decedent must have been a citizen or resident of the United States at the time of his or her death, 26 U.S.C. § 2032A(a)(1)(A);  the property must be located in the United States, *id.* § 2032A(b)(1);  the value of the property must exceed specified percentages of the decedent's gross estate and adjusted estate, *id.;*  the property must devolve to a "qualified heir," who must be a member of the decedent's family, *id., id.* § 2032A(e)(1), (2);  and the decedent or a member of the decedent's family must have materially participated in the operation of the farm or business at the time of the decedent's death and for five of the eight years preceding the decedent's death, *id.* § 2032A(b)(1).

Additionally, in order to avoid subsequent recapture of the tax savings produced by special use valuation, the property must remain in the ownership of the family and must be used for the qualified use for at least ten years following the decedent's

death.   26 U.S.C. § 2032A(c).   At the time of the election for special use valuation, the qualified heirs who inherited the property ("qualified heirs") must agree to keep the specially valued property in the family and to operate it for the qualified use for ten years.  *Id.,* § 2032A(c) and (d)(2).   The contract expressing such agreement by the qualified heirs, commonly called a   "recapture   agreement,"   must   be   executed   and   filed contemporaneously with the estate tax return.  *Id.* § 2032A(a)(1). In  this  recapture  agreement,  the  qualified  heirs  must  bind themselves  under  state  law  to  be  personally  liable  to  the government  for  a  recapture  tax  in  the  event  of  a  premature disposition of the property or an early cessation of the qualified use.   26 C.F.R. § 20.2032A-8(c).

Special use valuation of qualified real property does not occur just because the Estate satisfies all of the substantive conditions;   rather,  the  Estate  must  affirmatively  elect  such treatment on the estate tax return.   26 U.S.C. § 2032A(a)(1)(B). The principal requirements for a valid election are (1) checking the appropriate box on the estate tax return and completing the Schedule N;  (2) completing and attaching to the return a notice of election,  which  contains  all  of  the  information  specified  in  § 2032A  and  the  applicable  regulations;   and  (3)  attaching  a recapture  agreement  that  has  been  signed  by  all  parties  with interests in the specially valued property, expressly consenting to personal  liability  for  the  recapture  tax  in  the  event  of  a premature disposition of the property or an early cessation of its qualified  use.   "Thus  a  Notice  of  Election  and  a  Recapture

Agreement, validly and completely executed and filed contemporaneously with the estate tax return, are essential prerequisites if an estate that elects special use valuation is to be in *full* compliance with § 2032A." *Estate of Hudgins v. Commissioner,* 57 F.3d 1393, 1397 (5th Cir.1995).

Treating Congress' allowance of special use valuation as an act of legislative grace, the I.R.S. and the courts have strictly construed § 2032A and its requirements. *See Prussner v. United States,* 896 F.2d 218, 220 (7th Cir.1990) (en banc). In response to complaints from taxpayers who were denied special use valuation because of their failure to comply fully with all of the procedural requirements for a valid election, Congress passed two statutes designed to block the I.R.S. from seizing upon slight technical defects, which would prevent otherwise qualified taxpayers from taking advantage of special use valuation. *See McAlpine v. Commissioner,* 968 F.2d 459, 461 (5th Cir.1992). Under 26 U.S.C. § 2032A(d)(3), added by the Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 1025, 98 Stat. 494, 1030-31, an estate whose initial election for special use valuation "substantially complies" with the applicable regulations may subsequently correct technical deficiencies within a reasonable period (not to exceed ninety days) following notice from the I.R.S. Section 1421 of the Tax Reform Act of 1986 provides similar relief to certain taxpayers who elected § 2032A treatment on the estate tax return and provided "substantially all the information with respect to such election required on such return of tax." Tax Reform Act of 1986, Pub.L. No. 99-514, § 1421(a)(2), 100 Stat. 2085, 2716, as amended by the

Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100-647, § 1014(f), 102 Stat. 3343, 3562.

In the instant case, the Estate concedes that its election for special use valuation did not fully comply with the applicable regulations. However, the Estate argues that its initial effort to elect special use valuation "substantially complied" with the applicable regulations, thus entitling the Estate, pursuant to 26 U.S.C. § 2032A(d)(3), to correct or perfect its defective election once notified by the I.R.S. In the alternative, the Estate contends that it provided "substantially all the information" required on its return with respect to the election for special use valuation, and that it was eligible under § 1421 of the Tax Reform Act of 1986 to perfect its previously defective election. We address each of the Estate's arguments.

B. *Section 2032A(d)(3)*

It is undisputed that the Estate failed to file a recapture agreement with the estate tax return. In addition, the Estate omitted several items of information from the notice of election, and failed to check the box on the portion of the tax return that asks whether the estate intends to elect special use valuation. Nevertheless, the Estate argues that it "substantially complied" with the applicable regulations in its effort to elect special use valuation, thus entitling it to correct the defects in its election pursuant to § 2032A(d)(3). We disagree, and hold that the Estate's failure to attach a recapture agreement is sufficient by itself to preclude the requisite "substantial compliance" with the

regulations.[4]

Section 2032A(d)(3) provides as follows:

MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.—The Secretary [of the Treasury] shall prescribe procedures which provide that in any case in which—

(A) the executor makes an election under [26 U.S.C. § 2032A(d)(1) ] within the time prescribed for filing such election, and

(B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

(i) the notice of election, as filed, does not contain all required information, or

(ii) signatures of 1 or more persons required to enter into the [recapture agreement] are not included on the agreement as filed, or the agreement does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

26 U.S.C. § 2032A(d)(3).  "By "agreements' in the last line the statute evidently means an additional copy or additional copies of the agreement, containing the missing signatures."  *Prussner v. United States,* 896 F.2d 218, 222 (7th Cir.1990) (en banc).

The Code does not define the phrase "substantial compliance," and no Treasury regulations defining that phrase have been enacted. "It is left to the courts to determine whether a taxpayer has substantially complied with the applicable regulations such that

---

[4]Because we conclude that the absence of the recapture agreement is sufficient to preclude "substantial compliance" for purposes of § 2032A(d)(3), we do not address the effect of the Estate's omission of specific items of information from the notice of election.  With respect to the Estate's failure to check the "Yes" box on the portion of the return that asks whether the estate intends to elect special use valuation, *see* Part II.C., *infra.*

perfection of an election is allowed." *McAlpine v. Commissioner,* 968 F.2d 459, 461 (5th Cir.1992).

In answering the question presented—whether a taxpayer who fails to attach any kind of recapture agreement to the estate tax return has "substantially complied" with the regulations for making an election—we start with the statute itself. The language of § 2032A(d)(3)(B)(ii) allows the taxpayer to correct a defective election where the taxpayer "substantially complies with the regulations ... with respect to [the] election, but ... signatures of 1 or more persons required to enter into the [recapture agreement] are not included on the agreement as filed, or the agreement does not contain all required information...." The foregoing language implies that the taxpayer who has submitted a recapture agreement, albeit with defects, will be allowed to correct those defects. It does not suggest that such relief should be afforded to the taxpayer who has failed to submit any kind of recapture agreement with his or her return. *See Estate of Hudgins v. Commissioner,* 57 F.3d 1393, 1400-01 (5th Cir.1995) (holding § 2032A(d)(3) is available for the correction of "hypertechnical glitches," not the complete failure to file a recapture agreement); *McDonald v. Commissioner,* 853 F.2d 1494, 1497-98 (8th Cir.1988) (explaining that § 2032A(d)(3) allows the taxpayer to correct "slight technical failures" in an otherwise acceptable recapture agreement).

The legislative history of the Deficit Reduction Act of 1984 also indicates that the failure to attach any kind of recapture agreement to the estate tax return precludes "substantial

compliance" for purposes of § 2032A(d)(3).  According to the conference report, the recapture agreement itself, as originally filed, must substantially comply with the regulations, and thus the defects subject to correction must be minor.  The report states:

> [A]n agreement to the current use valuation election may be perfected under this provision provided the agreement, as filed with the estate tax return, evidences substantial compliance with the requirements of the regulations.  To be eligible for perfection, the agreement as originally filed must at a minimum be valid under State law and must include the signatures of all parties having a present interest or a remainder interest other than an interest having a relatively small value.  The right to perfect agreements is intended to be limited to cases where, for example, a parent of a minor remainderman, rather than a *guardian ad litem,* as required under State law, signs the agreement.  Similarly, failure to designate an agent in the agreement as filed may be corrected under this provision.

H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 1241, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1445, 1929 (footnote omitted).  The complete failure to attach a recapture agreement to the estate tax return is not the type of defect contemplated by the drafters of § 2032A(d)(3).[5]

The attachment of a recapture agreement to the estate tax return is part and parcel of a valid election for special use valuation, thus leading to the conclusion that a taxpayer cannot

---

[5]As explained in the text below, it is clear that the Estate's total failure to attach a recapture agreement renders the Estate ineligible for the relief afforded by § 2032A(d)(3). Thus, we need not address the more difficult issues involving the effect of various deficiencies in a timely filed recapture agreement.  Nor need we address the possible tension between the statutory language of § 2032A(d)(3) (implying that the filing of a signed recapture agreement might constitute substantial compliance, notwithstanding the need to obtain additional signatures) and the language of the legislative history quoted above, to the effect that the agreement as initially filed must contain signatures of all except interests of small value.  *See McAlpine v. Commissioner,* 968 F.2d 459, 463 (5th Cir.1992).

substantially comply with the regulations for making an election without attaching a recapture agreement. *See Estate of Hudgins v. Commissioner,* 57 F.3d 1393, 1398 (5th Cir.1995) (explaining that a recapture agreement "is an integral and indispensable element of a special use valuation election"). Section 2032A(a)(1) provides that an estate may enjoy special use valuation only where "the executor elects the application of this section *and filed the agreement referred to in subsection (d)(2)* [i.e., the recapture agreement]." 26 U.S.C. § 2032A(a)(1)(B) (emphasis added). The Treasury regulations and the legislative history accompanying § 2032A confirm that an election for special use valuation is not valid unless a recapture agreement is submitted contemporaneously with the estate tax return. *See* 26 C.F.R. § 20.2032A-8(a)(3) ("An election under this section is made by attaching to a timely filed estate tax return the agreement described in paragraph (c)(1) of this section [i.e., the recapture agreement] and a notice of election...."); H.R.Rep. No. 94-1380, 94th Cong., 2d Sess. 27 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 2897, 3356, 3381 ("One of the requirements for making a valid election is the filing with the estate tax return a written [recapture] agreement signed by each person in being who has an interest (whether or not in possession) in any qualified real property with respect to which the [special] use valuation is elected.").

To be valid, the recapture agreement must be executed by all parties who have any kind of property interest in the specially valued property. 26 U.S.C. § 2032A(d)(2); 26 C.F.R. § 20.2032A-8(c)(1). In the agreement, the qualified heirs to the specially

valued property must express consent to personal liability for the recapture tax imposed by § 2032A(c), which is triggered by an early disposition of the property or an early cessation of the qualified use. 26 C.F.R. § 20.2032A-8(c)(1). To aid the Commissioner in collecting the recapture tax, the recapture agreement must be binding under local law on all parties with an interest in the property, and it must designate an agent for the parties with satisfactory evidence of authority to act for all parties to the agreement in dealing with the I.R.S. on matters arising under § 2032A. *Id.* § 20.2032A-8(c)(1). The personal liability of the qualified heirs through the recapture agreement is complemented by 26 U.S.C. § 6324B, which gives the United States a lien on the specially valued real property to aid in the collection of the recapture tax. As the Fifth Circuit recently explained, the availability of a statutory lien against the property does not diminish the importance of the recapture agreement:

> Personal liability of the heirs [through the recapture agreement] enhances the likelihood that the property will be kept in the family and used for qualified purposes, and that the Commissioner would be able to recover the defaulted tax benefit if, by the time recapture is triggered, the value of the property shall have so declined that the § 6324 lien is then wholly or partially worthless.... The heirs' agreement to be personally liable for the tax consequences is equally indispensable, for "without the heirs' signatures, the election on the original return may not effectively bind the heirs."

*Estate of Hudgins v. Commissioner,* 57 F.3d 1393, 1398-99 (5th Cir.1995) (quoting *McDonald v. Commissioner,* 89 T.C. 293, 305 n. 31, 1987 WL 43888 (1987), *aff'd in part and rev'd in part,* 853 F.2d 1494 (8th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989)).

The foregoing explanation of the essential nature of a recapture agreement leads ineluctably to the conclusion that a taxpayer does not "substantially comply" with the requirements for electing special use valuation without submitting a recapture agreement with the return. Moreover, the case law from every circuit court of appeals to have considered this issue, as well as the United States Tax Court, clearly supports this holding. *See Estate of Hudgins v. Commissioner,* 57 F.3d 1393, 1405 (5th Cir.1995) ("[W]e hold today that a special use valuation election can never be in substantial compliance with the requirements of § 2032A if the estate tax return in which the election is made is not accompanied by a Recapture Agreement or some reasonable facsimile thereof, signed by the holders of all interests (other than de minimis) in the qualified assets, and personally binding the interest holders under state law to be liable for tax deficiencies in the event of disqualifying use or disposition of the property during the statutory period."); *Prussner v. United States,* 896 F.2d 218, 223 (7th Cir.1990) (en banc) (holding that the failure to attach the recapture agreement to the estate tax return is a default for which § 2032A(d)(3) provides "no absolution"); *McDonald v. Commissioner,* 853 F.2d 1494, 1497-98 (8th Cir.1988) (holding that a timely-filed recapture agreement, which contained "neither the name nor the signature of anyone with an interest in the property," did not "substantially comply" with the regulations and thus could not be perfected later); *Estate of Merwin v. Commissioner,* 95 T.C. 168, 173, 1990 WL 120054 (1990) ("Failure to attach a recapture agreement, whether or not a notice of election

is attached, alone precludes the requisite substantial compliance [under § 2032A(d)(3) ].").

For the foregoing reasons, we hold that the Estate has not satisfied the substantial compliance provision of § 2032A(d)(3) and thus is not entitled under that section to perfect its deficient election.  We now turn to the Estate's other argument.

C. *Section 1421 of the Tax Reform Act of 1986*

The Estate also contends that § 1421 of the Tax Reform Act of 1986 (hereinafter "§ 1421") excuses its failure to submit a recapture agreement with its estate tax return.  Section 1421, as amended, provides as follows:

> SEC.  1421.  INFORMATION  NECESSARY  FOR  VALID  SPECIAL  USE VALUATION ELECTION.
>
> (a) IN GENERAL.—In the case of any decedent dying before January 1, 1986, if the executor—
>
> > (1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code, and
> >
> > (2) provided substantially all the information with respect to such election required on such return of tax,
>
> such election shall be a valid election for purposes of section 2032A of such Code.
>
> (b)  EXECUTOR  MUST  PROVIDE  INFORMATION.—An  election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of the enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.

Tax Reform Act of 1986, Pub.L. No. 99-514, § 1421, 100 Stat. 2085, 2716, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100-647, § 1014(f), 102 Stat. 3343, 3562.

In order for a defective election to be deemed valid under §

1421(a), three conditions must be satisfied: (1) the decedent must have died before January 1, 1986; (2) the taxpayer must have "made an election" for § 2032A treatment on the estate tax return; and (3) the taxpayer must have "provided substantially all the information with respect to such election required on such return of tax."[6] In this case, the first condition has been satisfied, because the decedent died on December 15, 1985. The parties disagree, however, on whether the second and third requirements have been satisfied.

With respect to the second condition, the government argues that the Estate failed to make an election for special use valuation on its estate tax return. Indeed, the Estate failed to check the box, on page 2 of the return, which is designated for electing special use valuation. This failure to check the appropriate box, the government points out, distinguishes this case from the cases that the Estate relies upon in its brief. *See Prussner v. United States,* 896 F.2d 218, 225 (7th Cir.1990) (en banc) ("All that is required [under § 1421] ... is the making of an election *on the estate tax return*—that is, the marking of the box for the election. The taxpayer who checks the box—that was done here—and provides substantially all the information that the return requires with respect to the election is home free."); *Estate of Doherty v. Commissioner,* 982 F.2d 450, 456 (10th Cir.1992) (following *Prussner* and noting that the taxpayer "marked the box

---

[6]Notwithstanding the satisfaction of these three conditions, special use valuation may be denied if the executor of the estate fails to respond in a timely manner to a request for the missing information pursuant to § 1421(b).

for the election on the estate's tax return").

We are not persuaded that the Estate's failure to mark the appropriate box on its tax return is sufficient, by itself, to preclude relief under § 1421. In this case, despite the failure to mark the box, the Estate expressed a clear intent on the estate tax return to elect special use valuation. Specifically, the Estate completed a Schedule N, which appears at page 15 of the return and is entitled "Section 2032A Valuation." A taxpayer would not complete a Schedule N unless an election for special use valuation was intended. In addition to the Schedule N, the Estate attached to its return a document entitled "Affidavit from Personal Representatives," which contained much of the information required by 26 C.F.R. § 20.2032A-8(a)(3) to be included in a § 2032A "notice of election" and which clearly indicated the Estate's intent to elect special use valuation for the real property designated on the Schedule A as Parcels 3A, 3B, and 3C. Under these circumstances, we conclude that the Estate "made an election under section 2032A" on its tax return, however awkwardly, thus satisfying the second condition for relief under § 1421.

The third condition for § 1421 relief is that the Estate must have "provided substantially all the information with respect to such election required on such return of tax." § 1421(a)(2). The government argues that the Estate failed to provide substantially all of the required "information" because it failed to submit a recapture agreement with its return. [7] The Estate, on the other

---

[7]In addition to omitting the recapture agreement, the Estate also omitted certain items of information from its notice of election. *See supra* note 3. However, the government apparently

hand, contends that a recapture agreement does not constitute "information" for purposes of § 1421(a)(2). We confront a split of authority on the issue of whether the phrase "information with respect to such election required on such return of tax," as used in § 1421(a)(2), includes the recapture agreement. *Compare Prussner v. United States,* 896 F.2d 218, 225-28 (7th Cir.1990) (en banc)[8] *with Estate of Merwin v. Commissioner,* 95 T.C. 168, 181, 1990 WL 120054 (1990).[9]

---

concedes that, with the exception of the omitted recapture agreement, the Estate provided "substantially all the information" required on the estate tax return with respect to the § 2032A election.

[8]The Tenth Circuit, in *Estate of Doherty v. Commissioner,* 982 F.2d 450, 456-57 (10th Cir.1992), indicated that it was "greatly persuaded by the rationale of *Prussner.*" *Id.* at 456. Although this dicta in *Doherty* indicates approval of the *Prussner* rationale, the holding in *Doherty* is not necessarily inconsistent with the holding of this opinion. *Doherty* involved a taxpayer who failed to attach to the estate tax return a previously obtained appraisal of the fair market value of the property sought to be specially valued. *Id.* at 455. The face of the Form 706 in *Doherty* apparently did not direct the taxpayer to include the missing appraisal. *Id.* at 451-52. By contrast, in the instant case (and in *Prussner* ), the face of the Form 706 directs the taxpayer to attach a recapture agreement.

Although the face of the Form 706 in *Doherty* did not alert the taxpayer that an appraisal had to be attached, the instructions accompanying the Form 706 clearly directed the taxpayer to attach "copies of written appraisals of the fair market value of the real property." Thus, *Doherty* stands for the proposition that a taxpayer who fails to follow the instructions accompanying Form 706 is nevertheless entitled to relief under § 1421. In the instant case, because the face of the Form 706 directs the taxpayer to attach a recapture agreement, we need not decide whether the failure to provide substantially all the information elicited by the separate instructions accompanying the return precludes relief under § 1421. Accordingly, we express no opinion on that particular issue.

[9]The Eighth Circuit, in *McDonald v. Commissioner,* 853 F.2d 1494 (8th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), employed an interpretation of § 1421

As in any case of statutory interpretation, we start with the language of the statute itself. *See Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). In our opinion, the ordinary meaning of the word "information," in the context of the phrase "information with respect to such election required on such return," § 1421(a)(2), is broad enough to include the recapture agreement.[10] As consultation with dictionaries confirms, the word "information" can encompass a broad range of meaning. The language of the statutory phrase, "information with respect to such election," elaborates the scope of the meaning in this context, i.e., information *with respect to such election.* Clearly, the statute at this point is referring to the data which the statute and regulations indicate are necessary for the election. The recapture agreement is one such item, indeed a significant one. *See Estate of Merwin v. Commissioner,* 95 T.C. 168, 182, 1990 WL 120054 (1990) (explaining that the word "information" includes "everything that section 2032A and the corresponding regulations require for a valid election," including a recapture agreement). The statutory language then specifies the portion of that broader

different from that of *Merwin* or our opinion in this case. *McDonald* indicated that § 1421 requires substantial compliance with the separate instructions accompanying Form 706, with no discussion of the relevance of the directions on the return form itself, although its facts may not have required a holding of that breadth. *Accord Foss v. United States,* 865 F.2d 178 (8th Cir.1989). As noted in note 8, *supra,* we express no opinion on the effect of the taxpayer's failure to comply with the separate instructions accompanying Form 706.

[10]We recognize that the Seventh Circuit in *Prussner v. United States,* 896 F.2d 218, 226-28 (7th Cir.1990) (en banc) is contra. For the reasons discussed below, we respectfully disagree with the *Prussner* interpretation.

range of items (i.e., those necessary for the election) that the taxpayer must provide, i.e., those items "required on such return." In the instant case, the return form specifically directed that the "required agreements" be attached.

Our interpretation finds strong support in the structure of the statute. The very next subsection of this same 1986 statute, § 1421(b), also uses the word "information" in a manner that undoubtedly contemplates the inclusion of recapture agreements.[11] Section 1421(b) provides that "[a]n election described in subsection (a) shall not be valid if the Secretary ... requests *information* from the executor with respect to such election and the executor does not provide such *information* within 90 days of receipt of such request." (Emphasis added). Clearly, as used in § 1421(b), Congress intended the phrase "information" to include a recapture agreement. As noted above, the recapture agreement is an essential ingredient for a valid election; it is unreasonable to suppose that Congress was not contemplating in § 1421(b) that the Secretary could request information including the recapture agreement. *Accord Merwin,* 95 T.C. at 182.

Our interpretation is confirmed by the legislative history of § 1421. Apparently, the face of the June 1982 version of Form 706 failed to specify the requirement of filing the recapture agreement with the return. As a result, many taxpayers who had used that

---

[11]It is true that in a related statute, I.R.C. § 2032A(d)(3), the statutory language more precisely uses both the term "information" and the term "agreement." *See Prussner,* 896 F.2d at 228. However, we find more persuasive the use of the word "information" in a broader, inclusive sense in the *very next subsection of the same 1986 Act.*

version of the Form 706 failed to submit recapture agreements, and were denied special use valuation. The conference report accompanying § 1421 explains:

> The Senate amendment provides that estates of individuals dying before January 1, 1986, that substantially complied with the requirements enumerated on the Federal Estate Tax Return (as opposed to Treasury Department regulations) are allowed to perfect defective elections within 90 days of being notified of errors by the Treasury. Specifically, the March 1982 edition of Form 706, Federal Estate Tax Return, did not specify that the required agreement had to be submitted with the estate tax return. This provision, therefore, permits late filing of the required agreements for estates that used the March 1982 version of Form 706.

H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II-770-71 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 4075, 4858-59. Although the legislative history refers to the "March 1982" version of Form 706, Congress in fact meant to refer to the June 1982 version. *Prussner,* 896 F.2d at 226; *Merwin,* 95 T.C. at 178. Running throughout the legislative history is the indication that the purpose of the statute was to permit later perfection of the election by a taxpayer who could have been misled by an absence of information on the tax return, i.e., where the taxpayer has substantially complied with the requirements enumerated on the return. Thus, the report of the Senate Finance Committee states:

Reasons for Change

> The committee is concerned that, in certain cases, the Federal estate tax return (Form 706) provided by the Treasury Department for filing estate tax returns did not sufficiently inform taxpayers of what information must be provided to elect current use valuation and that an agreement to the election is required to be attached to Form 706. The committee determined, therefore, that limited relief permitting taxpayers additional time to supply information is appropriate *where taxpayers could have been misled by an absence of information on Form 706.*

Explanation of Provision

> The bill provides that, if an estate ... provided substantially all the information *elicited by Form 706,* ... the election is valid if the estate provides ... additional information necessary to perfect the election.... (This provision permits notices of election and [recapture] agreements to the election to be filed late where the estate timely filed those documents *to the extent requested and described on Form 706.*)

S.Rep. No. 313, 99th Cong. 2d Sess. (1986) (Emphasis added).

Despite the clear indication in the legislative history, and indeed the statute itself, that the purpose of the statute was to permit later perfection by taxpayers who "substantially complied with the requirements enumerated" on the return (i.e., those who timely filed those documents to the extent requested on the return), the *Prussner* court would apparently permit later perfection by taxpayers who merely checked the election box on the return. The *Prussner* court gave two reasons for its holding: its view that a recapture agreement is not "information" in the ordinary sense of the word; and the fact that the recapture agreement is attached to the return rather than written out "on" the return. *Id.,* 896 F.2d at 225-26.

We disagree with *Prussner* 's reading of the statute. As noted above, we believe that the word "information," as used in § 1421(a)(2), is broad enough to include the recapture agreement.[12] Moreover, we think that *Prussner* erred in relying on the technicality that the recapture agreement is attached to the tax return, as opposed to being "on" the return itself. The text of §

---

[12]The broad definition of "information" in the dictionaries belies the suggestion in *Prussner,* 896 F.2d at 226, that the word "information" cannot include a report of a commitment. The definition in the various dictionaries is inconsistent with the *Prussner* notion that the term is limited in meaning to inert data with no real life consequences.

1421(a)(2) requires that the taxpayer shall have "provided substantially all the information ... required on such return of tax." The Seventh Circuit interpreted the phrase "required on such return of tax" as referring to the location where the taxpayer supplies the relevant information, and thus held that the substantial compliance provision of § 1421(a)(2) does not apply to documents that must be attached to the return. We respectfully suggest that *Prussner* 's is a technical interpretation of the statutory language, which misses its true import. To be eligible to perfect the return, the statute requires that the taxpayer must have "provided substantially all the information ... required on such return." The most reasonable reading of the statutory language is that the phrase "required on such return" refers to the word "information." Thus, the taxpayer must have provided—whether written in the spaces provided on the return or attached to the return—the "information," or substantially all of it, which the return directs should be provided.

We respectfully suggest that the *Prussner* court inappropriately watered down the statutory requirement of substantial compliance by relying upon an unduly narrow interpretation of the statutory term "information" and a technical construction of the statutory phrase "required on such return of tax," and by failing to accord proper significance to the legislative history and to the fact that Congress in the same 1986 Act, in the very next subsection (i.e., § 1421(b)), employed the same term "information" in a context which clearly encompasses the

recapture agreement.[13]

The Tax Court in *Estate of Merwin v. Commissioner,* 95 T.C. 168, 1990 WL 120054 (1990), rejected the *Prussner* court's interpretation for the same reasons that we do. *Merwin* concluded that the phrase "required on such return" means "requested by the face of Form 706." *Id.* at 179. Thus, if the taxpayer uses a version of Form 706 that on its face requests a recapture agreement, then the recapture agreement constitutes "information" required to satisfy the substantial compliance language of § 1421(a)(2). The Tax Court supported this interpretation of the statute by quoting from the legislative history noted above.

Under *Merwin* 's interpretation of § 1421, the estate's initial return need not include a recapture agreement if the face of Form 706 makes no reference to a required "agreement" or to specific instructions describing a recapture agreement. *Id.,* 95 T.C. at 179. Thus, a taxpayer who used the June 1982 version of Form 706 would have provided "substantially all the information ... required on such return of tax" even if a recapture agreement had not been attached. However, consistent with the statutory language and legislative history quoted above, a different rule applies to taxpayers who use nonmisleading versions of the Form 706:

> In contrast to the June 1982 version of Form 706, if the face of the applicable Form 706 refers expressly to a required "agreement' or to specific instructions that describe a recapture agreement, Congress appears to have intended the

---

[13]We need not and do not address another holding of the *Prussner* court, i.e., its rejection of the I.R.S. argument that the relief afforded by the 1986 Act is limited to those taxpayers who filed their returns on the June 1982 version of Form 706. Moreover, as indicated in our discussion in Part II.B., we agree with the *Prussner* holding with respect to I.R.C. § 2032A(d)(3).

> "information with respect to such election required on such return of tax' to expand accordingly.... An estate will then satisfy section 1421(a)(2) only if it provides substantially all of the expanded information base. The reason the estate should be held to a higher level of compliance under these circumstances is that the face of the Form 706 is sufficient to alert the estate to additional requirements, and misled taxpayers were the exclusive congressional concern underlying section 1421....

*Merwin,* 95 T.C. at 180.

We find *Merwin* persuasive. We hold that the word "information," as used in § 1421(a)(2), includes the recapture agreement in this case, where the face of the applicable Form 706 refers to the "required agreements." The instant case involves the March 1985 version of Form 706, not the June 1982 version addressed in the legislative history. Unlike the June 1982 version of Form 706 (the face of which makes no reference to a required "agreement" nor to the applicable parts of the instructions), the face of the March 1985 form tells the taxpayer that a recapture agreement must be attached to the return. Specifically, line 2 (on page 2) asks the taxpayer: "Do you elect special use valuation?" Immediately below this question, the March 1985 form states: "If "Yes,' complete and attach Schedule N and the agreements required by the instructions to Schedule N." Similarly, Schedule N, which is part of the return, directs the taxpayer: "Enter the requested information for each party who received any interest in the specially valued property. Also complete and attach the required agreements described in the Instructions." Because these references appear on the face of the March 1985 version of Form 706, we conclude in this case that a recapture agreement constitutes "information with respect to such election required on

such return of tax" for purposes of § 1421(a)(2).[14]

In order to take advantage of § 1421, the taxpayer must have provided "substantially all" of the "information" requested by the tax return. In light of our earlier discussion of the importance of the recapture agreement, and in light of our holding that the omission of a recapture agreement precludes "substantial compliance" with the requirements for electing special use valuation for purposes of § 2032A(d)(3), we readily conclude that the Estate in this case failed to provide "substantially all the information ... required on such return of tax" within the meaning of § 1421(a)(2).

### III. CONCLUSION

For all the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[14]In this case, because the Form 706 itself expressly referred to the required agreements, we need not address issues involving a different version of the form with perhaps less specific reference (e.g., incorporation of directions in the instructions which accompany the return) to the omitted information. *See supra* notes 8 & 9.